1    JEFFER, MANGELS, BUTLER & MITCHELL LLP
ROBERT B. KAPLAN (Bar No. 76950)
2    Two Embarcadero Center, Fifth Floor
San Francisco, California 94111-3813
3    Telephone:    (415) 398-8080
Facsimile:    (415) 398-5584
4

5    Attorneys for Plaintiffs WELLS FARGO BANK, N.A., as Trustee
for (i) the Registered Holders of GE Commercial Mortgage
Corporation Commercial Mortgage Pass-Through Certificates,
6    Series 2005-C4; (ii) the Registered Holders of GMAC Commercial
Mortgage Securities, Inc., Mortgage Pass-Through Certificates,
7    Series 2006-C1; and (iii) the Holders of COMM 2005-FL11
Commercial Mortgage Pass-Through Certificates, acting by and
8    through Midland Loan Services, Inc., its Special Servicer

*ORIGINAL FILED*

AUG   9 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

EMC

CV 10 3493

| | |
|---|---|
| WELLS FARGO BANK, N.A., as Trustee for (i) the Registered Holders of GE Commercial Mortgage Corporation Commercial Mortgage Pass-Through Certificates, Series 2005-C4; (ii) the Registered Holders of GMAC Commercial Mortgage Securities, Inc., Mortgage Pass-Through Certificates, Series 2006-C1; and (iii) the Holders of COMM 2005-FL11 Commercial Mortgage Pass-Through Certificates, acting by and through Midland Loan Services, Inc., its Special Servicer, | CASE NO. |
| | **COMPLAINT FOR SPECIFIC PERFORMANCE AND APPOINTMENT OF RECEIVER** |
| Plaintiffs, | |
| v. | |
| DDR MDT MV ANAHEIM HILLS LP, a Delaware limited partnership; DDR MDT MV ANTIOCH LP, a Delaware limited partnership; DDR MDT MV CHANDLER LLC, a Delaware limited liability company; DDR MDT MV CHINO LP, a Delaware limited partnership; DDR MDT MV CLOVIS LP, a Delaware limited partnership; DDR MDT MV DEER VALLEY LLC, a Delaware limited liability company; DDR MDT MV FOLSOM LP, a Delaware limited partnership; DDR MDT MV FOOTHILL RANCH LP, a Delaware limited partnership; DDR MDT MV GARDEN GROVE LP, a Delaware limited partnership; DDR MDT MV INGRAM LP, a Delaware limited partnership; DDR MDT MV LOMPOC LP, a Delaware limited partnership; DDR MDT MV MADERA LP, a Delaware limited | **PART 1 OF 2** **(WITH EXHIBITS 1-5)** |

*(left margin, rotated)* JMBM | Jeffer Mangels Butler & Mitchell LLP

*(left margin stamp)* COPY

PRINTED ON
RECYCLED PAPER
1021888v4

- 1 -      COMPLAINT FOR SPECIFIC PERFORMANCE
& APPOINTMENT OF RECEIVER

1  partnership; DDR MDT MV NORTH
   FULLERTON I LP, a Delaware limited
2  partnership; DDR MDT MV PALMDALE LP,
   a Delaware limited partnership; DDR MDT MV
3  REDDING LP, a Delaware limited partnership;
   DDR MDT MV RENO LLC, a Delaware
4  limited liability company; DDR MDT MV
   SANTA MARIA LP, a Delaware limited
5  partnership; DDR MDT MV SANTA ROSA
   LP, a Delaware limited partnership; DDR MDT
6  MV SILVER CREEK LLC, a Delaware limited
   liability company; DDR MDT MV SLATTEN
7  RANCH LP, a Delaware limited partnership;
   DDR MDT MV SONORA LP, a Delaware
8  limited partnership; DDR MDT MV
   SUPERSTITION SPRINGS LLC, a Delaware
9  limited liability company; DDR MDT MV
   TUCSON LLC, a Delaware limited liability
10 company; DDR MDT MV TULARE LP, a
   Delaware limited partnership; DDR MDT MV
11 WEST LAS VEGAS LLC a Delaware limited
   liability company; DDR MDT MV BURBANK
12 LP, a Delaware limited partnership,

13          Defendants.

14

15          Plaintiffs Wells Fargo Bank, N.A., as Trustee (the "Trustee") for (i) the Registered

16 Holders of GE Commercial Mortgage Corporation Commercial Mortgage Pass-Through

17 Certificates, Series 2005-C4; (ii) the Registered Holders of GMAC Commercial Mortgage

18 Securities, Inc., Mortgage Pass-Through Certificates, Series 2006-C1; and (iii) the Holders of

19 COMM 2005-FL11 Commercial Mortgage Pass-Through Certificates (collectively, the "Trusts" or

20 the "Plaintiffs") acting by through their Special Servicer Midland Loan Services ("Midland")

21 complains (this "Complaint") and alleges against DDR MDT MV Anaheim Hills LP, a Delaware

22 limited partnership; DDR MDT MV Antioch LP, a Delaware limited partnership; DDR MDT MV

23 Chandler LLC, a Delaware limited liability company; DDR MDT MV Chino LP, a Delaware

24 limited partnership; DDR MDT MV Clovis LP, a Delaware limited partnership; DDR MDT MV

25 Deer Valley LLC, a Delaware limited liability company; DDR MDT MV Folsom LP, a Delaware

26 limited partnership; DDR MDT MV Foothill Ranch LP, a Delaware limited partnership; DDR MDT

27 MV Garden Grove LP, a Delaware limited partnership; DDR MDT MV Ingram LP, a Delaware

28 limited partnership; DDR MDT MV Lompoc LP, a Delaware limited partnership; DDR MDT MV

1    Madera LP, a Delaware limited partnership; DDR MDT MV North Fullerton I LP, a Delaware

2    limited partnership; DDR MDT MV Palmdale LP, a Delaware limited partnership; DDR MDT MV

3    Redding LP, a Delaware limited partnership; DDR MDT MV Reno LLC, a Delaware limited

4    liability company; DDR MDT MV Santa Maria LP, a Delaware limited partnership; DDR MDT

5    MV Santa Rosa LP, a Delaware limited partnership; DDR MDT MV Silver Creek LLC, a Delaware

6    limited liability company; DDR MDT MV Slatten Ranch LP, a Delaware limited partnership; DDR

7    MDT MV Sonora LP, a Delaware limited partnership; DDR MDT MV Superstition Springs LLC, a

8    Delaware limited liability company; DDR MDT MV Tucson LLC, a Delaware limited liability

9    company; DDR MDT MV Tulare LP, a Delaware limited partnership; DDR MDT MV West Las

10   Vegas LLC, a Delaware limited liability company (collectively, the "Original Borrowers"); and

11   DDR MDT MV Burbank LP, a Delaware limited partnership ("Second Joinder Borrower") (the

12   Original Borrowers, and the Second Joinder Borrower are hereinafter collectively referred as the

13   "Borrowers" or the "Defendants").

14                                        **THE PARTIES**

15          1.      The Trustee is a national banking association, whose main office is located in

16   San Francisco, California, and is the Trustee for (i) the Registered Holders of GE Commercial

17   Mortgage Corporation Commercial Mortgage Pass-Through Certificates, Series 2005-C4; (ii) the

18   Registered Holders of GMAC Commercial Mortgage Securities, Inc., Mortgage Pass-Through

19   Certificates, Series 2006-C1; and (iii) the Holders of COMM 2005-FL11 Commercial Mortgage

20   Pass-Through Certificates, acting by and through Midland Loan Services, Inc., its Special Servicer.

21          2.      Plaintiffs are informed and believe and thereon allege that each of the

22   Defendants are either Delaware limited liability companies or Delaware limited partnerships, as

23   more specifically alleged in the caption of this Complaint, and are citizens of the state of Delaware.

24                                 **JURISDICTION AND VENUE**

25          3.      Jurisdiction of this action is predicated on 28 U.S.C. § 1332(a) in that the

26   amount in controversy exceeds the sum or value of $75,000, inclusive of interests and costs, and is

27   between citizens of different states.

28          4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because the



1    substantial part of the property that is the subject of the above-entitled action is situated in this

2    District or a substantial part of the events or omissions giving rise to the claims which are the

3    subject of the above-entitled action occurred in this District or one or more of the Defendants is

4    subject to personal jurisdiction at the time the action is commenced in this district.

5                                    **GENERAL ALLEGATIONS**

6         5.    In September and November 2005, German American Capital Corporation

7    (the "Original Lender") provided loans in the aggregate principal amount of $265,687,500

8    (collectively, the "Loan") to the Borrowers.

9         6.    To govern the Loan, the Original Lender, the Original Borrowers et al.

10   executed that certain Loan and Security Agreement dated as of September 16, 2005 (the "Original

11   Loan Agreement"), a true and correct copy of which is attached hereto as Exhibit 1 and incorporated

12   herein by this reference as though set forth in full.[1]

13        7.    The Original Borrowers and the Original Lender et al. executed (i) that

14   certain First Amendment to Loan Documents and Joinder Agreement dated as of September 30,

15   2005 (the "First Amendment") (ii) that certain letter agreement dated as of October 31, 2005 (the

16   "First Letter Agreement").  A true and correct copy of the First Amendment is attached hereto as

17   Exhibit 2 and incorporated herein by this reference as though set forth in full.

18        8.    The Original Borrowers, the Second Joinder Borrower and the Original

19   Lender et al. executed that certain Second Amendment to Loan Documents and Joinder Agreement

20   dated as of November 14, 2005 (the "Second Amendment"; and the Original Loan Agreement, as

21   amended by the First Agreement, the First Letter Amendment, the Second Letter Agreement

22   (defined below), and the Second Amendment, the "Loan Agreement"), whereby the Second Joinder

23   Borrower became jointly and severally liable for the Obligations.

24        9.    The Loan is evidenced by three notes, each executed by the Defendants to the

25   order of the Original Lender, as follows:  (i)  that certain Fixed Rate Note A-1 dated as of

26   _____

27        [1] All capitalized terms not otherwise defined in this Complaint shall have the meaning
     ascribed to them in the Loan Documents, as that term is defined in the Original Loan Agreement.

28

JMBM | Jeffer Mangels Butler & Mitchell LLP

1   November 14, 2005, in the original principal amount of $106,275,000.00 (the "A-1 Note"); (ii) that

2   certain Fixed Rate Note A-2 dated as of November 14, 2005, in the original principal amount of

3   $106,275,000.00 (the "A-2 Note"); and (iii) that certain Amended and Restated Floating Rate Note

4   dated as of November 14, 2005, in the original principal amount of $45,922,500.00 (the "A-3 Note";

5   and the A-1 Note, the A-2 Note, and A-3 Note, collectively, the "Notes"). A true and correct copy

6   of A-1 Note, the A-2 Note and the A-3 Note are attached hereto respectively as Exhibits 3, 4 and 5

7   and incorporated herein by this reference as though set forth in full.

8          10.    To secure, inter alia, the obligations of the Defendants to the Original Lender

9   under and in respect of the Loan and the Loan Agreement, the Notes, and the other Loan

10   Documents executed by the Defendants (these being the Obligations), inter alia, the Original

11   Borrowers executed (i) that certain Fee and Leasehold Deed of Trust, Security Agreement,

12   Financing Statement, Fixture Filing and Assignment of Leases, Rents, and Security Deposits dated

13   as of September 16, 2005, as trustor, to the various trustees named therein, as trustees, for the

14   benefit of the Original Lender, as beneficiary (the "Original Security Instrument"), encumbering

15   their respective fee or leasehold interests, as the case may be, in the Properties owned or leased by

16   them (those Properties, collectively, the "Original Properties"), and associated personal property, all

17   as more particularly set forth and identified therein; and (ii) that certain Assignment of Leases,

18   Rents, and Security Deposits dated as of the same date (the "Original Assignment of Leases"), to the

19   Original Lender, assigning to the Original Lender the Rents and the Leases of the Original

20   Properties, all as more particularly set forth and identified therein. By way of example only,

21   attached hereto as Exhibit 6 is a true and correct copy of the Original Security Agreement executed

22   by the Defendants which was recorded on September 22, 2005 as Document No. 2005-0361951-00

23   in the Official Records of the Contra Costa County Recorder's Office with respect to the Properties

24   commonly known as 2602 Somersville Road, Antioch, California and 5849 Lonetree Way, Antioch,

25   California and, by way of example only, attached hereto as Exhibit 7 is a true and correct copy of

26   the Original Assignment of Leases recorded on September 22, 2005 in the Official Records of the

27   Contra Costa County Recorder's Office as Document No. 2005-036-1952-00 with respect to the

28   Properties commonly known as 2602 Somersville Road, Antioch, California and 5849 Lonetree

JMBM | Jeffer Mangels
Butler & Mitchell LLP



1   Way, Antioch, California.

2          11.     The Original Security Instrument and the Original Assignment of Leases

3   were each recorded in the Official Records of each of the counties in which an Original Property is

4   located (those counties, collectively, the "Original Properties Counties").

5          12.     The Original Borrower, and the Original Lender et al. executed that certain

6   Modification to Mortgage Collateral Security Documents and Spreader Agreement dated as of

7   September 30, 2005 (the "First Security Documents Amendment"), modifying the Original Security

8   Instrument and the Original Assignment of Leases, all as more particularly set forth and identified

9   therein. The First Security Documents Amendment was recorded in the Official Records of each of

10  the Original Properties Counties. A true and correct copy of the First Security Documents

11  Amendment is attached hereto as Exhibit 8 and incorporated herein by this reference as though set

12  forth in full.

13         13.     The Second Joinder Borrower executed (A) that certain Fee and Leasehold

14  Deed of Trust, Security Agreement, Financing Statement, Fixture Filing and Assignment of Leases,

15  Rents, and Security Deposits dated as of September 30, 2005, as trustor, to the trustee named

16  therein, as trustee, for the benefit of the Original Lender, as beneficiary (the "Second Joinder

17  Security Instrument"; and the Original Security Instrument, and the Second Joinder Security

18  Instrument, collectively, the "Security Instrument"), encumbering its leasehold interest in the

19  Property leased by it (the "Second Joinder Property"), and associated personal property, all as more

20  particularly set forth and identified therein; and (B) that certain Assignment of Leases, Rents, and

21  Security Deposits dated as of the same date (the "Second Joinder Assignment of Leases"), to the

22  Original Lender, assigning to the Original Lender the Rents and the Leases of the Second Joinder

23  Property, all as more particularly set forth and identified therein. The Second Joinder Security

24  Instrument and the Second Joinder Assignment of Leases were each recorded in the Official

25  Records of the county in which the Second Joinder Property is located (that county, the "Second

26  Joinder Property County"; and the Original Properties Counties, and the Second Joinder Property

27  County, collectively, the "Counties").

28         14.     The Borrowers and the Original Lender executed that certain Second

PRINTED ON
RECYCLED PAPER
1021888v4

- 6 -          COMPLAINT FOR SPECIFIC PERFORMANCE
              & APPOINTMENT OF RECEIVER

1    Modification to Mortgage Collateral Security Documents and Spreader Agreement dated as of

2    November 14, 2005 (the "Second Security Documents Amendment"), further modifying the

3    Original Security Instrument and the Original Assignment of Leases (the Original Security

4    Instrument and the Original Assignment of Leases, as modified by the First Security Documents

5    Amendment and the Second Security Documents Amendment, respectively, the "Security

6    Instrument" and the "Assignment of Leases") all as more particularly set forth and identified

7    therein. The Second Security Documents Amendment was recorded in the Official Records of each

8    of the Original Properties Counties.  A true and correct copy of the Second Security Documents

9    Amendment is attached hereto as <u>Exhibit 9</u> and incorporated herein by this reference as though set

10   forth in full.

11                  15.     Attached hereto as <u>Exhibit 10</u> and incorporated herein by this reference as

12   though set forth in full is a chart which identifies the common address of the Original Properties, the

13   Second Joinder Property, the location of the county of each of the Original Properties, and the

14   Second Joinder Property and the date of the recording of the original Security Instrument, the

15   Second Joinder Security Instrument, the Original Assignment of Leases, and the Second Joinder

16   Assignment of Leases recorded in the Original Property Counties and the Second Joinder Property

17   County.

18                  16.     Pursuant to and in connection with the Loan and the Loan Agreement, the

19   Borrowers et al., variously, executed multiple other Loan Documents in addition to those identified

20   above, including the Environmental Indemnity, the Assignment of Letter of Credit Proceeds, the

21   Assignment of Management Agreement, the Account Agreement, and the Collateral Assignment.

22                  17.     In December 2005 and January 2006, the Loan was securitized into three

23   commercial mortgage pools, to wit, (i) as to the A-1 Note, the GE Commercial Mortgage

24   Corporation Commercial Mortgage Pass-Through Certificates, Series 2005-C4 pool (the "2005-C4

25   Pool"); (ii) as to the A-2 Note, the GMAC Commercial Mortgage Securities, Inc., Mortgage Pass-

26   Through Certificates, Series 2006-C1 Pool (the "2006-C1 Pool"); and (iii) as to the A-3 Note, the

27   COMM 2005-FL11 Commercial Mortgage Pass-Through Certificates pool (the "2005-FL11 Pool";

28   and the 2005-C4 Pool, the 2006-C1 Pool, and the 2005-FL11 Pool, collectively, the "Pools"),





1    became administered and managed, and is now held as follows:

2    a.    In December 2005 and January 2006, the Original Lender assigned all

3    of its right, title, and interest in, to, under, and with respect to the Loan, the Loan Agreement, the

4    Notes, and the other Loan Documents to the A-1 Noteholder, the A-2 Noteholder, and the A-3

5    Noteholder pursuant to certain Mortgage Loan Purchase Agreements between the Original Lender

6    and, respectively, the A-1 Noteholder, as to the A-1 Note; the A-2 Noteholder, as to the A-2 Note;

7    and the A-3 Noteholder, as to the A-3 Note, and related documents, but in each case only to the

8    extent of the respective Note, all as is more particularly set forth therein (these loan assignments,

9    collectively, the "Loan Assignment").

10    b.    Pursuant to (i) that certain A Notes Intercreditor Agreement dated as

11    of November 29, 2005, executed by and between the Original Lender as A1 Noteholder, the

12    Original Lender as A2 Noteholder, and the Original Lender as A3 Noteholder (the "ICA"); (ii) that

13    certain Pooling and Servicing Agreement dated as of December 1, 2005, executed by and between

14    (A) GE Commercial Mortgage Corporation, as Depositor; (B) Midland Loan Services, Inc.

15    ("Midland"), as Servicer and Special Servicer (in those capacities, respectively, the "Master

16    Servicer" and the "Special Servicer"); and (C) the A-1 Noteholder (the "2005-C4 PSA"); (iii) that

17    certain Pooling and Servicing Agreement dated as of January 1, 2006, executed by and between (A)

18    GMAC Commercial Mortgage Securities, Inc., as Depositor; (B) GMAC Commercial Mortgage

19    Corporation ("GMACCM"), as Master Servicer and Serviced Whole Loan Paying Agent; (C) CW

20    Capital Asset Management LLC, as Special Servicer; and (D) the A-2 Noteholder (the "2006-C1

21    PSA"); and (iv) that certain Pooling Agreement dated as of November 1, 2005, executed by and

22    between (A) Deutsche Mortgage & Asset Receiving Corporation, as Depositor; (B) GMACCM, as

23    Master Servicer; (C) LNR Partners, Inc. as Initial Special Servicer; (D) GE Capital Realty Group,

24    Inc., as Initial Special Servicer of the Whitehall/Starwood Golf Portfolio Loan; and (E) the A-3

25    Noteholder (the "2005-FL11 PSA"; and the 2005-C4 PSA, the 2006-C1 PSA, and the 2005-FL11

26    PSA, collectively, the "PSAs"), after securitization of the Loan into the Pools, the Loan was to be

27    serviced as a Serviced Whole Loan (as defined in the 2005-C4 PSA) in the 2005-C4 Pool in

28    accordance with the 2005-C4 PSA and the ICA, with administration and servicing of the Loan by

JMBM Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
1021888v4

- 8 -    COMPLAINT FOR SPECIFIC PERFORMANCE
& APPOINTMENT OF RECEIVER



1    and through the Trustee on its own behalf (as the A-1 Noteholder) and on behalf of the A-2

2    Noteholder and the A-3 Noteholder, acting through Midland as the Master Servicer and the Special

3    Servicer under the 2005-C4 PSA.

4            18.    The Trusts are now, variously, the holder, payee, mortgagee, beneficiary,

5    assignee, and secured party of or with respect to the Loan, the Loan Agreement, the Notes, and the

6    other Loan Documents.

7            19.    Pursuant to the 2005-C4 PSA, since on or about October 22, 2008 (the

8    "Transfer Date"), due to the occurrence of a Servicing Transfer Event (as defined therein), the

9    Trustee has been acting by and through the Special Servicer with respect to the Loan and the Loan

10    Documents, and the Special Servicer has the authority so to act on behalf of the Trustee. That

11    authority is further evidenced by that certain Limited Power of Attorney to Midland Loan Services,

12    Inc., from Wells Fargo Bank, N.A., Trustee for Certificateholders of GE Commercial Mortgage

13    Corporation Commercial Mortgage Pass-Through Certificates Series 2005-C4 dated as of January

14    18, 2006 (the "Power"), executed by the Trustee. The Power was recorded with the Register of

15    Deeds, Wyandotte County, Kansas, on January 31, 2006, as Instrument No. 2006R-02354.

16            20.    In connection with the Loan, the Loan Documents, the Properties and related

17    matters, the Borrowers et al. and the Special Servicer executed that certain Agreement Regarding

18    Negotiations dated January 14, 2009 (the "Prenegotiation Agreement") and thereafter on January

19    30, 2009, the Borrowers et al. and the Trusts made that certain Letter Agreement re Kohl's Sale

20    dated February 4, 2009 (the "Second Letter Agreement"), a true and correct copy of which is

21    attached hereto as Exhibit 11 and incorporated herein by this reference as though set forth in full..

22            21.    On or about September 28, 2009, the Borrower and the Trusts, et al. executed

23    that certain Loan Modification Agreement dated as of that date (the "Modification Agreement"), a

24    true and correct copy which is attached hereto as Exhibit 12 and incorporated herein by this

25    reference as though set forth in full.

26                               **FIRST CLAIM FOR RELIEF**

27            22.    Trustee realleges and incorporate herein by reference each and every

28    allegation contained in paragraphs 1 through 21 of this Complaint and incorporates the same as

PRINTED ON
RECYCLED PAPER
1021888v4

JMBM | Jeffer Mangels
Butler & Mitchell LLP

   COMPLAINT FOR SPECIFIC PERFORMANCE
             & APPOINTMENT OF RECEIVER

1 though set forth herein.

2     23.     An Event of Default has occurred under the Loan Documents because of,

3 inter alia, the failure of the Borrowers to deposit to the Holding Account the amount by which the

4 Monthly Borrower Contribution Amount for the Payment Dates of February 1, 2010, March 1,

5 2010, April 1, 2010, May 1, 2010, June 1, 2010, and July 1, 2010 exceeded the funds in the Excess

6 Debt Service Reserve Account on each of the foregoing Payment Dates.

7     24.     As a result of the occurrence of the foregoing Event of Default, the Trusts

8 accelerated all amounts due and owing thereunder and demanded repayment of the outstanding

9 Debt owed by the Defendants to Trusts pursuant to the Loan Documents including, without

10 limitation, all unpaid principal, interest, interest at the Default Rate, attorneys' fees and costs and

11 other amounts due and owing by the Defendants to the Trust pursuant to the Loan Documents. The

12 Defendants failed to comply with the Trusts' demand for repayment of all outstanding Debt owed by

13 the Defendants to the Trusts pursuant to Loan Documents and failed and refused to pay said

14 amounts to the Trusts or any other sum.

15     25.     There remains due, owing and payable to Trusts pursuant to the Loan

16 Documents, as of July 29, 2010, the principal sum of $158,643,720.06, plus accrued and unpaid

17 interest to and including July 29, 2010 in the sum of $2,121,439.58, plus additional amounts due

18 and owing pursuant to the Loan Documents, all of which continue to accrue according to proof to

19 be presented at the time of trial and/or date of entry of judgment.

20     26.     Trusts and Original Lender have duly performed all of the conditions

21 precedent that are required to be performed on their part under the terms of the Loan Documents.

22     27.     Section 10(h) of the Original Security Instrument and the Second Joinder

23 Security Instrument provides as follows:

24     Voluntary Appearance; Receivers. Upon the occurrence, and during
the continuance of, any Event of Default hereunder or pursuant to the
25     Loan Agreement, and immediately upon commencement of (i) any
action, suit or other legal proceeding by Lender (or Trustee, if
26     required by law) to obtain judgment for the principal and interest on
the Note and any other sums required to be paid pursuant to this
27     Security Instrument, or (ii) any action, suit or other legal proceeding
by Lender or Trustee of any other nature in aid of the enforcement of
28     the Loan Documents or any of them, Borrower will (a) enter its



JMBM | Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
1021888v4

- 10 -     COMPLAINT FOR SPECIFIC PERFORMANCE
    & APPOINTMENT OF RECEIVER

1    voluntary appearance in such action, suit or proceeding, and (b) if
     required by Lender, consent to the appointment, of one or more
2    receivers of the Property and all of the Rents. After the occurrence of
     any Event of Default, or upon the filing of a bill in equity to foreclose
3    this Security Instrument or to enforce the specific performance hereof
     or in aid thereof, or upon the commencement of any other judicial
4    proceeding to enforce any right of Lender or Trustee, Lender (or
     Trustee, if required by law) shall be entitled, as a matter of right, if it
5    shall so elect, without notice to any other party and without regard to
     the adequacy of the security of the Property, forthwith, wither before
6    or after declaring the principal and interest on the Note to be due and
     payable, to the appointment of such a receiver or receivers. Any
7    receiver or receivers so appointed shall have such powers as a court or
     courts shall confer, which may include, without limitation, any or all
8    of the powers which Lender or Trustee is authorized to exercise by
     the provisions of this <u>Section 10</u>, and shall have the right to incur such
9    obligations and to issue such certificates therefor as the court shall
     authorize.

10

11   28.    Furthermore, Section 3(b) of the Original Assignment of Leases and Second

Joinder Assignment of Leases provides as follows:
12

13          Any time after the occurrence and continuance of an Event of Default,
            Lender, without in any way waiving such Event of Default, at its
14          option and without regard to the adequacy of the security for
            Obligations and the other obligations secured hereby and by any Loan
15          Document, either in person or by agent or by a receiver appointed by
            a court, may enter upon and take possession of the Property and have,
16          hold manage, lease and operate the same on such terms and for such
            period of time as Lender may deem proper.

17   29.    As a result of the occurrence of an Event of Default under the Loan

18   Documents, the Trusts are entitled to have a receiver appointed to enter upon and take possession of

19   the Original Properties and the Second Joinder Property (collectively, the "Subject Properties").

20   30.    There is no adequate remedy at law to enforce the provisions of the Loan

21   Documents and it is necessary that a receiver be appointed to take possession and charge of the

22   Subject Properties, to conserve and manage the same, and to protect the Subject Properties.

23   31.    Unless a receiver is appointed by this Court to take possession of, care for,

24   manage and operate the Subject Properties, Trusts' interest in the Subject Properties, as provided for

25   by the Loan Documents, will be lost and materially prejudiced.

26   32.    By reason of said facts, Trusts pray that this Court appoint a receiver in

27   accordance with the law to take control of and manage and protect the Subject Properties.

28   33.    For the foregoing reasons, and in aid of the receiver, Trusts seek a temporary

1   restraining order and preliminary and permanent injunctions, restraining and enjoining Defendants
2   and their agents, servants and employees, and all those acting in concert with them, and each of
3   them, from engaging or performing, directly or indirectly, any of the following acts:

4                          a.     Demanding, collecting, receiving, or in any other way diverting or
5   using any of the Subject Properties, including, without limitation any and all Rents due or hereafter
6   to become due under any rental or lease agreements;

7                          b.     Interfering with or hindering, in any way whatsoever, the receiver in
8   the performance of the receiver's duties herein described and in the performance of any duties
9   incident thereto;

10                         c.     Interfering in any manner with the Subject Properties including its
11  possession;

12                         d.     Transferring, concealing, destroying, defacing, or altering any of the
13  instruments, documents, ledger cards, books, records, printouts, or other writings relating to the
14  Subject Properties or any portion thereof; and

15                         e.     Transferring, conveying, assigning, pledging, deeding, selling,
16  renting, leasing, encumbering, changing ownership, vesting or title to, or otherwise disposing of, the
17  Subject Properties.

18                                          **PRAYER**

19              WHEREFORE, Trusts pray for judgment against the Defendants, and each of them,
20  as to all causes of action as follows:

21          1.      That a receiver (in such capacity, the "Receiver") be appointed to take
22  possession and charge of the Subject Properties, to conserve and manage the same, and to protect
23  the Subject Properties;

24          2.      That the Defendants, and anyone holding under said Defendants, be ordered
25  to deliver possession of the Subject Properties to the Receiver forthwith;

26          3.      That the Receiver, after taking possession of the Subject Properties, be
27  permitted to do, among other acts, the following:

28                         a.     To enter, gain access to and take possession of the Subject Properties;

JMBM | Jeffer Mangels
       Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
1021888v4

- 12 -    COMPLAINT FOR SPECIFIC PERFORMANCE
          & APPOINTMENT OF RECEIVER




1   to exclude Defendants or anyone claiming under or through Defendants therefrom who are not

2   under valid leases or rental agreements; to use, operate, manage and control the Subject Properties;

3   to care for, preserve, protect, secure and maintain the Subject Properties; and to do all things to

4   incur the risks and obligations ordinarily incurred by owners, managers and operators of similar

5   businesses and properties, as such receiver, and no risks or obligations so incurred shall be at the

6   personal risk or obligation of the Receiver, but shall be at the risk or obligation of the receivership

7   estate; and to protect the Subject Properties;

8         b.   To demand, collect, and receive the Rents in possession of

9   Defendants, their agents, servants, employees or representatives, and all persons or entities acting

10  under or in concert with Defendants, or Rents that are now due and hereafter due from the tenants or

11  lessees of any portion of the Subject Properties;

12        c.   To rent or lease from time to time any part of the Subject Properties

13  and to keep the buildings thereon insured and in good repair;

14        d.   To take possession of and receive from any and all banks, savings and

15  loan associations and/or any financial institutions any monies and funds on deposit in said banks,

16  savings and loan associations and/or any financial institutions in the name of the Defendants, to the

17  extent that said accounts contain the Rents generated by or arising out of the Subject Properties, and

18  the Receiver's receipt of said monies and funds shall discharge said banks, savings and loan

19  associations and/or any financial institutions from further responsibility for accounting to said

20  account holder for monies and funds for which the Receiver shall give his or her receipt;

21        e.   To take possession of all the books and records pertaining to the

22  Subject Properties located at the Subject Properties, as the Receiver deems necessary for the proper

23  administration, management and/or control of the receivership estate, and said books and records

24  shall be made available to Defendants, their agents, servants, employees or representatives, and all

25  persons or entities acting under or in concert with Defendants as is reasonably necessary;

26        f.   To execute and prepare all documents and to perform all acts in the

27  Receiver's own name on behalf of the Defendants, which are necessary or incidental to preserving,

28  protecting, managing and/or controlling the property of the receivership estate; provided, however,

JMBM Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
1021888v4

- 13 -   COMPLAINT FOR SPECIFIC PERFORMANCE & APPOINTMENT OF RECEIVER

1  that the Receiver will not, in so acting on behalf of the Defendants, be deemed to be an agent of the

2  Defendants, and any monetary obligations incurred by the Receiver acting on behalf of the

3  Defendants in operating, managing, controlling, caring for, preserving, protecting, securing, or

4  maintaining the Subject Properties will nonetheless be obligations of the receivership estate and not

5  personal obligations of the Defendants;

6       g.      To employ agents, servants, employees, guards, clerks, accountants,

7  on-site managers and management consultants to administer the receivership estate and to collect

8  the Rents, manage the Subject Properties, and to keep the same and in good repair, if the Receiver

9  shall deem necessary, and to pay the reasonable value of said services out of the Rents received;

10       h.      To require Defendants to notify the Receiver upon the Receiver's

11  taking possession of the Subject Properties whether or not there is sufficient insurance coverage on

12  the Subject Properties. If sufficient insurance coverage does exist, (1) Defendants shall be

13  responsible for naming, and are hereby ordered to name, the Receiver as an additional insured on

14  the insurance policy(ies) for the period that the Receiver shall be in possession of the Subject

15  Properties; and (2) the Receiver shall pay any monthly premiums coming due on said insurance

16  policy(ies) after the Receiver is appointed and so long as he continues in possession of the Subject

17  Properties. If there is insufficient insurance coverage, it is hereby ordered that the Receiver shall

18  have thirty (30) working days to procure said insurance on the Subject Properties, provided that the

19  Receiver has the funds available to do so, and during said period the Receiver shall not be

20  personally responsible for claims arising from or out of the procurement of insurance;

21       i.      To hold the monies coming into possession of the Receiver pursuant

22  to his or her operation of the business thereto, and not expended for any of the purposes herein

23  authorized, for the payment of the Defendants' obligation to the Trusts sued upon in the Complaint,

24  subject to such orders as this Court may hereinafter issue as to their disposition;

25       j.      To establish bank accounts for the deposit of monies and funds

26  collected and received in connection with the Receiver's administration of the receivership estate, at

27  any institution the Receiver deems appropriate, provided that any funds on deposit at said financial

28  institution are fully insured by an agency of the United States government;

JMBM | Jeffer Mangels Butler & Mitchell LLP



k.      To institute ancillary proceedings in this state or in other states and countries as are necessary to preserve and protect the receivership estate, and the Receiver may engage the services of legal counsel, if necessary, without further application to the Court. The Receiver may pay for such services from the funds of the receivership estate;

l.      To prepare periodic interim statements reflecting the Receiver's fees and administrative costs and expenses incurred for the period of the Receiver's operation and administration of the receivership estate;

m.      To have the authority, with the written consent of Trusts, to engage the services of one or more environmental consultants to perform Phase I, II or III Environmental Audits at the Subject Properties. The Receiver may pay for such services from the funds of the receivership estate;

n.      To have the authority, subject to a further order of the above-entitled Court, to sell the Subject Properties; and

o.      To obtain a temporary restraining order and preliminary and permanent injunctions restraining and enjoining the Defendants, their servants, agents and employees, and all those acting in concert with them, and each of them, from engaging in, or performing, directly or indirectly, any or all of the following acts:

(1)      Demanding, collecting, receiving or in any way diverting or using any of the Subject Properties, including, without limitation, the rents, lease payments, or room rentals from any of the guests, tenants or lessees of the Subject Properties;

(2)      Interfering with or hindering in any way whatsoever the Receiver in the performance of the Receiver's duties herein described and in the performance of any duties incident thereto;

(3)      Interfering in any manner with the Subject Properties including its possession;

(4)      Transferring, conveying, assigning, pledging, deeding, selling, renting, leasing, encumbering, changing ownership of, vesting of title to, or otherwise disposing of, the Properties; and

COMPLAINT FOR SPECIFIC PERFORMANCE
& APPOINTMENT OF RECEIVER

PRINTED ON
RECYCLED PAPER
1021888v4

Jeffer Mangels
Butler & Mitchell LLP

JMBM



1    (5)    Hindering or preventing the Receiver from transferring the

2  utilities which service the Subject Properties into the Receiver's name.

3    4.    For costs of suit herein incurred which shall be added to the unpaid

4  obligations due and owing by the Defendants to the Trusts; and

5    5.    For such other and further relief as the Court may deem just and proper.

6

7  DATED: August __ , 2010         JEFFER MANGELS, BUTLER & MITCHELL LLP

8                               By: _____

9                                       ROBERT B. KAPLAN
                                  Attorneys for Plaintiffs WELLS FARGO BANK, N.A.,
10                                 as Trustee for (i) the Registered Holders of GE
                                  Commercial Mortgage Corporation Commercial
11                                 Mortgage Pass-Through Certificates, Series 2005-C4;
                                  (ii) the Registered Holders of GMAC Commercial
12                                 Mortgage Securities, Inc., Mortgage Pass-Through
                                  Certificates, Series 2006-C1; and (iii) the Holders of
13                                 COMM 2005-FL11 Commercial Mortgage Pass-
                                  Through Certificates, acting by and through Midland
14                                 Loan Services, Inc., its Special Servicer

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PRINTED ON
RECYCLED PAPER                    - 16 -    COMPLAINT FOR SPECIFIC PERFORMANCE
1021888v4                                   & APPOINTMENT OF RECEIVER