1  JEFFER MANGELS BUTLER & MITCHELL LLP
   ROBERT B. KAPLAN (Bar No. 76950)
2  Two Embarcadero Center, Fifth Floor
   San Francisco, California 94111-3813
3  Telephone:    (415) 398-8080
   Facsimile:    (415) 398-5584
4
   Attorneys for Plaintiff WELLS FARGO BANK, N.A., as Trustee
5  for (i) the Registered Holders of GE Commercial Mortgage
   Corporation Commercial Mortgage Pass-Through Certificates,
6  Series 2005-C4; (ii) the Registered Holders of GMAC Commercial
   Mortgage Securities, Inc., Mortgage Pass-Through Certificates,
7  Series 2006-C1; and (iii) the Holders of COMM 2005-FL11
   Commercial Mortgage Pass-Through Certificates, acting by and
8  through Midland Loan Services, Inc., its Special Servicer

9                    UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11  WELLS FARGO BANK, N.A., as Trustee, etc.,    CASE NO.    CV 10-3493 EMC

12             Plaintiffs,                        **ORDER AUTHORIZING RECEIVER TO**
                                                  **ENTER INTO COMMISSION AND**
13        v.                                      **LISTING AGREEMENTS FOR SALE OF**
                                                  **REAL PROPERTY**
14  DDR MDT MV ANAHEIM HILLS LP, etc., et
    al.,
15
               Defendants.
16

17

18        The Court, having reviewed the Stipulation Authorizing Receiver to Enter into

19  Commission Listing Agreements for Sale of Property ("Stipulation"), filed by Plaintiffs Wells Fargo

20  Bank, N.A., as Trustee for (i) the Registered Holders of GE Commercial Mortgage Corporation

21  Commercial Mortgage Pass-Through Certificates, Series 2005-C4; (ii) the Registered Holders of

22  GMAC Commercial Mortgage Securities, Inc., Mortgage Pass-Through Certificates, Series 2006-

23  C1; and (iii) the Holders of COMM 2005-FL11 Commercial Mortgage Pass-Through Certificates,

24  acting by and through Midland Loan Services, Inc., its Special Servicer and Defendants DDR MDT

25  MV Anaheim Hills LP, DDR MDT MV Antioch LP, DDR MDT MV Chandler LLC, DDR MDT

26  MV Chino LP, DDR MDT MV Clovis LP, DDR MDT MV Deer Valley LLC, DDR MDT MV

27  Folsom LP, DDR MDT MV Foothill Ranch LP, DDR MDT MV Garden Grove LP, DDR MDT

28  MV Ingram LP, DDR MDT MV Lompoc LP, DDR MDT MV Madera LP, DDR MDT MV North

1  Fullerton I LP, DDR MDT MV Palmdale LP, DDR MDT MV Redding LP, DDR MDT MV Reno

2  LLC, DDR MDT MV Santa Maria LP, DDR MDT MV Santa Rosa LP, DDR MDT MV Silver

3  Creek LLC, DDR MDT MV Slatten Ranch LP, DDR MDT MV Sonora LP, DDR MDT MV

4  Superstition Springs LLC, DDR MDT MV Tucson LLC, DDR MDT MV Tulare LP, DDR MDT

5  MV West Las Vegas LLC, and DDR MDT MV Burbank, LP, and good cause appearing therefor:

6          IT IS HEREBY ORDERED that the Receiver is hereby authorized to enter into the

7  Listing Agreements attached hereto collectively as Exhibit 1.[1]

8

9  DATED:  2/15/11

10            UNITED STATES

_IT IS SO ORDERED_

_Judge Edward M. Chen_

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

---

[1] All terms capitalized herein but not defined shall have the meanings ascribed to them in hat certain Stipulation Authorizing Receiver to Enter into Commission and Listing Agreements for Sale of Property previously filed in the above-entitled action.

ORDER AUTHORIZING RECEIVER TO ENTER
ETC.; Case No. CV 10-3493 EMC

JMBM | Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
1084879v1

# Exhibit 1

## COMMISSION AND LISTING AGREEMENT FOR SALE OF PROPERTY

THIS COMMISSION AND LISTING AGREEMENT FOR SALE OF PROPERTY ("**Agreement**") is made and entered into by and between Receivership Over Specific Assets of DDR MDT MV Anaheim Hills L.P., et al ("**Receiver**"), and ___Cornish & Carey Commercial Newmark Knight Frank_____, ("**Broker**") and is effective as of ___December   20^th__, 2010 (the "**Effective Date**").

### RECITALS

A.      Receiver is in possession of certain real property fully described in the attached as Exhibit "A" (the "**Property**").

B.      Receiver is duly appointed and acting pursuant to the order (the "**Order**") of United States District Court Northern District of California (the "**Court**") entered on August 24, 2010, in the matter of Wells Fargo bank, N.A., as Trustee v. DDR MDT MC Anaheim Hills LP, etc., et al., filed in such Court under Case No. CV 10-3493 EMC for certain assets in such matter (the "**Receivership Estate**").

C.      The parties hereto desire to enter into an agreement whereby Receiver appoints Broker as Receiver's exclusive listing broker to sell the Property, subject to and in accordance with the terms, covenants, conditions and agreements herein contained.

NOW THEREFORE, in consideration of the foregoing, and in consideration of the mutual terms, covenants, conditions and agreements herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      **Employment of Broker**.  Receiver hereby retains Broker as its exclusive broker upon the conditions and for the compensation hereinafter set forth, to market and sell the Property upon terms and conditions that may be acceptable to Receiver in Receiver's absolute discretion (hereinafter sometimes referred to as the "**Contemplated Transactions**").   Receiver acknowledges that Broker is active in the marketplace and that in some instances Broker may represent prospective purchasers.  Receiver desires that the Property be presented to such persons or entities and, without relieving Broker of any fiduciary obligations, Receiver consents to the dual representation created thereby.  Broker shall not disclose the confidential information of one principal to the other.

2.      **Term of Agency**.  The term of this Agreement shall be for a period of time commencing on the Effective Date and expiring six (6) months and shall continue on a Month to Month basis until terminated in accordance with the provisions of Paragraph 3 hereof.

3.      **Termination**.   Notwithstanding any other provision of this Agreement, the agreements herein contained shall be terminated and the rights and obligations of the parties hereto shall thereupon cease, and an accounting shall be made by Broker to the Estate, upon any of the following circumstances or events:

(a)      Consummation of a bona fide sale of the Property or foreclosure.

(b)      Substantial Destruction of the Property.  For purposes of this Agreement, the term "Substantial Destruction" shall be defined as destruction involving forty percent (40%) or more of the value of the improvements.

(c)      Taking under eminent domain or other like proceedings.  This Agreement shall terminate with respect to the portion so taken, but shall remain in full force and effect with respect to the balance of the Property; provided, however, that if the taking is of a substantial portion of the Property (twenty percent (20%) or more of the value thereof), this Agreement shall terminate as to all of the Property on the date when said taking occurs.

(d)      Broker is adjudged bankrupt or Broker makes an assignment for the benefit of its creditors or seeks relief from its creditors under any insolvency act.

(e)      Mutual agreement of the Receivership Estate and Broker expressed in writing.

      (f)      Thirty (30) days after written notice to terminate this Agreement is given by either party to the other party, which written notice may be given at any time without cause.

      (g)      In the event that the Broker shall fail to keep, observe or perform any covenant, term or provision of this Agreement then the Receiver shall have the option to terminate this Agreement, effectively immediately, upon written notice to the Broker.

      (h)      Upon the release of the Receiver or termination of the Receivership Estate.

    4.      Notwithstanding the foregoing, Receiver may terminate this Agreement, with or without cause, upon thirty (30) days prior written notice to Broker.

    5.      **Acceptance by Broker and Duties of Broker.** Broker hereby accepts such agency and agrees to perform all services appropriate and necessary for the Contemplated Transactions, and Broker shall:

      (a)      Use its best efforts to procure purchasers and assist Receiver and its agents (to the extent requested by Receiver) in the negotiation of all Contemplated Transactions. Receiver shall have the right, in its absolute discretion, to accept or reject any proposed purchaser and terms of sale.

      (b)      Maintain an adequate sales staff sufficient to carry out the Contemplated Transactions.

      (c)      Advertise and promote the sale of the Property, at Broker's cost, by newspaper advertising, signs (subject to applicable regulations), email blasts, circulars and mailings, including the preparation of a marketing brochure, and by engaging in other appropriate and customary forms of advertising, all of which shall be approved in advance by Receiver for form and content.

      (d)      Fully cooperate with other brokers in the marketplace in procuring a buyer and consummating the Contemplated Transactions.

      (e)      In the event the Property includes any residential homes, Broker shall be responsible for complying with all disclosures to purchasers that are required (if any), by law or regulation, using industry-standard brokerage forms.

      (f)      Perform such other duties as are customarily performed by listing agents selling similar properties.

    6.      **Insurance.** Broker shall maintain commercial general liability insurance containing a per occurrence and in the aggregate limit of at least $2,000,000 protecting against bodily injury, property damage (Broad Form) and personal injury claims arising from the exposures of (a) Premises-operations, (b) independent contractors, and (c) contractual liability risk covering the indemnity obligations set forth in this Agreement. Receiver shall be named as an additional insured. Broker shall maintain automobile liability coverage insuring against bodily injury and/or property damage arising out of the operation, maintenance or use of any auto. Broker shall maintain worker's compensation insurance covering servants and employees engaged in the performance of this Agreement at all times during the term of this Agreement. Evidence of said insurance satisfactory to Receiver must be provided to Receiver no later than ten days after the Effective Date. Such insurance shall provide for waiver of subrogation and contain an endorsement specifying that the insurance provided by Broker shall be considered primary, and any other insurance available to Receiver or the Property shall be considered excess as may be applicable to claims arising out of this Agreement. Broker shall give Receiver immediate notice of any cancellation, nonrenewal or adverse change in the insurance policy required herein.

    7.      **Compensation of Broker.** Receiver shall pay Broker compensation for its services in connection with Contemplated Transactions as follows:

      (a)      See Exhibit "B" for compensation details. The purchase price shall be accepted or rejected in Receiver's absolute discretion. No commission shall be earned or payable unless and until the close of escrow occurs, as evidenced by the recordation of a deed and the purchase price has been

disbursed pursuant to Receiver's instructions. Receiver may, from time to time, supply Broker with a specific purchase price for use in marketing the Property.

(b)     In all co-brokerage situations where a broker other than Broker procures a purchaser and Receiver accepts the Contemplated Transaction, Receiver may, at its option, (a) pay a one-half commission (or other amount as directed by a separate agreement) directly to such co-operating broker and a one-half commission (or other amount as directed by a separate agreement) to Broker, or (b) pay, and only be responsible for, a full commission to Broker, in which case Broker shall share equally its commissions with co-brokers and shall protect, indemnify, defend and hold harmless Receiver with respect to any claim from or by any broker claiming a commission as a result of dealings with Broker in excess of the amounts payable to Broker under this Agreement.

(c)     In any situation where the property is foreclosed on by the Plaintiff or if a settlement agreement is reached between the Plaintiff and the Defendant and the Property is returned to the Defendant Broker shall not be compensated.

8.     **Post-Termination/Expiration Commission Rights.** Subject to the terms and conditions of this Agreement, Broker shall be paid a commission if the Property is sold within 60 days after expiration or termination of this Agreement, provided that Broker has properly registered such purchaser with Receiver. As used in the preceding sentence, "registered" shall mean that Broker (or a cooperating broker working with Broker) procured such purchaser, and such purchaser submitted a written proposal or offer to purchase the Property, prior to such expiration or termination of this Agreement.

9.     **Acknowledgment.** Broker acknowledges and agrees that (a) Receiver has been appointed by Court to facilitate the sale of the Property, (b) Receiver is not in the business of developing, and (c) Receiver has not developed and was not involved with any development of the Property or the construction of any improvements thereon. Receiver's duties as to the Property shall be pursuant to the Order, until such time that the receivership is terminated by the Court. Broker acknowledges and agrees that Receiver is not personally liable or responsible for any damages that Broker may suffer as the result of this transaction. Broker further acknowledges and agrees that Receiver's liability for any such damages, if any, is limited to the assets of the Receivership Estate, that the receivership could be terminated at any time, and that Broker can not recover any damages from Receiver upon termination of the receivership. Broker further acknowledges that because the Property is in receivership and in the custody of Receiver, Receiver acts at the direction of the Court and only the Court which confirmed the receivership and issued the order for the Receivership Estate shall have any jurisdiction over any dispute relating to the Property. If for any reason prior to the close of escrow, such receivership is discharged and terminated by the Court, Broker acknowledges and agrees that notwithstanding any provisions in this Agreement to the contrary, this Agreement will terminate upon notice thereof from Receiver to Broker and Receiver shall have no obligation to pay Broker any money or compensation unless Receiver is otherwise instructed by the Court.

10.     **Court Approval of Sale.** This Agreement is subject to the Order and may be subject to final Court approval of the terms and conditions herein. If approval of this Agreement is required by the Court, this Agreement shall have no force or effect until such approval is granted by the Court.

11.     **Notice and Payments.** Any and all notices provided for herein shall be in writing and shall be delivered personally (including via courier) or deposited in the U.S. mail, certified with return receipt requested, postage prepaid and addressed as follows:

To Receiver:     Receivership Estate Over Specific
Assets of DDR MDT MV Anaheim
Hills L.P., et al
12707 High Bluff Drive, Suite 300
San Diego, CA 92130

To Broker:     Cornish & Carey Commercial
Newmark Knight Frank
1601 Response Road, Suite 160
Sacramento, CA 95815

12. **Assignment.** Broker shall not assign its interest in this Agreement, or any portion thereof, without the written consent of Receiver. Receiver may assign this Agreement without the consent of Broker.

13. **Entire Agreement; Modification.** This written Agreement constitutes the complete agreement between the parties and supersedes any prior oral or written agreements between the parties regarding the Property. There are no verbal agreements that change this Agreement and no waiver of any of its terms will be effective unless in a written agreement executed by the parties.

14. **Controlling Law.** This Agreement shall be interpreted under the laws of the jurisdiction of the Court that appointed Receiver for the Receivership Estate and shall be binding on the parties hereto, its successors, assigns, heirs and personal representatives. The parties agree that they shall be subject to the personal jurisdiction of the Court that appointed Receiver for the Receivership Estate and the proper venue shall be in the Court that appointed Receiver for the Receivership Estate.

15. **Severability.** In the event any term, covenant, condition, provision or agreement herein contained is held to be invalid, void or otherwise unenforceable by any court of competent jurisdiction, the fact that such term, covenant, condition, provision or agreement is invalid, void or otherwise unenforceable shall in no way affect the validity or enforceability of any other term, covenant, condition, provision or agreement herein contained.

16. **Limitation on Receiver's Liability.** The obligations of Receiver under this Agreement are not personal obligations of the Receiver and Broker shall not look to the personal assets of, nor seek personal recourse against, the Receiver.

17. **Indemnification.** To the fullest extent permitted by law, Broker agrees to indemnify, protect, defend and hold Receiver, its employees and agents entirely harmless from all liability on account of any and all claims under worker's compensation acts and other employee benefit acts with respect to Broker's employees. Broker shall also indemnify, protect, defend and hold Receiver, its employees and agents entirely harmless from and against any and all liens, claims for loss, expense, damages because of personal injury or death or damages to property, or other costs or charges, directly or indirectly arising out of, in whole or in part, Broker's negligent acts, errors and/or omissions in the performance of his obligations as stated in this Agreement, or the negligent acts, errors and/or omissions of Broker's employees or independent contractors in the performance of their obligations as stated in this Agreement. Broker will defend with counsel reasonably approved by Receiver any and all claims or suits which may be brought or threatened against Receiver or its employees or independent contractors in connection therewith and will pay on behalf of Receiver any expenses which Receiver incurs by reason of such claims (including, but not limited to, court costs or actions). The coverage of such indemnification shall include, without limitation, attorneys' fees and court, arbitration and/or mediation costs incurred by Receiver with regard thereto. Said indemnity shall survive the expiration or termination of this Agreement until such time as action against Receiver on account of any matter covered by this indemnity is barred by the applicable statute of limitations. Such payments on behalf of Receiver shall be in addition to any and all other legal remedies available to Receiver and shall not be considered Receiver's exclusive remedy.

18. **Representations by Broker.** Broker represents that it is duly licensed and qualified to act as a real estate broker in the State of where the Property is located. Broker represents and warrants to Receiver that Broker will market the Property and otherwise perform Broker's services under this Agreement in accordance with all applicable federal, state and local laws and regulations (including, without limitation, nondiscrimination laws and regulations). Without limiting the foregoing, the parties acknowledge that it is illegal for either Receiver or Broker to refuse to display or sell the Property to any person because of race, color, religion, national origin, sex, marital status or physical disability. Broker acknowledges and agrees that the Receiver desires to have the Property (and improvements thereon, if any) marketed and sold on an absolutely "As-Is; With-All-Faults" basis.

19. **Cost of Enforcement.** In the event of any action or proceeding between Receiver and Broker to enforce any of the provisions and/or rights under this Agreement or on account of a breach of any term or provision hereof (including without limitation arbitration, mediation and court actions at law or in equity), the unsuccessful party to such action or proceeding agrees to pay to the prevailing party all costs and expenses, including reasonable attorneys' fees, incurred therein by such prevailing party, including any such costs and expenses incurred in any appeal, and if such prevailing party shall recover an award or

judgment in any such action or proceeding, such costs, expenses and fees shall be included in and as a part of such award or judgment.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the Effective Date.

"RECEIVER":

Receivership Estate Over Specific Assets of DDR
MDT MV Anaheim Hills L.P., et al
12707 High Bluff Drive, Suite 300
San Diego, CA 92130

By: _____
William J. Hoffman, solely in his capacity as Court
Appointed Receiver Over Specific Assets of MDT
MV Anaheim Hills L.P., et al
As appointed by the United States District Court
Northern District of California in Wells Fargo Bank,
N.A. as Trustee, etc., v. DDR MDT MV Anaheim
Hills LP, etc., et al.
(Case No. CV 10-3493 EMC)

"BROKER":

Cornish & Carey Commercial Newmark Knight Frank
a 1601 Response Road, Suite 160
   Sacramento, CA 95815

By: _____
Print Name: Sean Fulp
Title: Managing Director

Exhibit A
Property

An approximately 62,947 SF building located at 1675 Hillman Street, Tulare, CA 93274 and commonly known as Mervyns at Arbor Faire Shopping Center.

Exhibit "B"
Commission

The following commission structure shall be applicable to both individual property sales and grouped property sales and payable only to the listing broker.

- 1.75% of the gross sales price of any sale up to $4,999,999.
- 1.50% of the gross sales price of any sale up to $9,999,999.
- 1.25% of the gross sales price of any sale of $10,000,000 or greater.

The following commission structure shall be available for both individual property sales and grouped property sales and payable only to the buyer's representing broker who shall in no case be affiliated with the listing broker.

- 1% of gross sales price of any other property

## COMMISSION AND LISTING AGREEMENT FOR SALE OF PROPERTY

THIS COMMISSION AND LISTING AGREEMENT FOR SALE OF PROPERTY ("**Agreement**") is made and entered into by and between Receivership Over Specific Assets of DDR MDT MV Anaheim Hills L.P., et al ("**Receiver**"), and ___Cornish & Carey Commercial Newmark Knight Frank___ , ("**Broker**") and is effective as of _December 20th_ , 2010 (the "**Effective Date**").

## RECITALS

A.      Receiver is in possession of certain real property fully described in the attached as Exhibit "A" (the "**Property**").

B.      Receiver is duly appointed and acting pursuant to the order (the "**Order**") of United States District Court Northern District of California (the "**Court**") entered on August 24, 2010, in the matter of Wells Fargo bank, N.A., as Trustee v. DDR MDT MC Anaheim Hills LP, etc., et al., filed in such Court under Case No. CV 10-3493 EMC for certain assets in such matter (the "**Receivership Estate**").

C.      The parties hereto desire to enter into an agreement whereby Receiver appoints Broker as Receiver's exclusive listing broker to sell the Property, subject to and in accordance with the terms, covenants, conditions and agreements herein contained.

NOW THEREFORE, in consideration of the foregoing, and in consideration of the mutual terms, covenants, conditions and agreements herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      **Employment of Broker.**  Receiver hereby retains Broker as its exclusive broker upon the conditions and for the compensation hereinafter set forth, to market and sell the Property upon terms and conditions that may be acceptable to Receiver in Receiver's absolute discretion (hereinafter sometimes referred to as the "**Contemplated Transactions**").  Receiver acknowledges that Broker is active in the marketplace and that in some instances Broker may represent prospective purchasers.  Receiver desires that the Property be presented to such persons or entities and, without relieving Broker of any fiduciary obligations, Receiver consents to the dual representation created thereby.  Broker shall not disclose the confidential information of one principal to the other.

2.      **Term of Agency.**  The term of this Agreement shall be for a period of time commencing on the Effective Date and expiring six (6) months and shall continue on a Month to Month basis until terminated in accordance with the provisions of Paragraph 3 hereof.

3.      **Termination.**  Notwithstanding any other provision of this Agreement, the agreements herein contained shall be terminated and the rights and obligations of the parties hereto shall thereupon cease, and an accounting shall be made by Broker to the Estate, upon any of the following circumstances or events:

(a)      Consummation of a bona fide sale of the Property or foreclosure.

(b)      Substantial Destruction of the Property.  For purposes of this Agreement, the term "Substantial Destruction" shall be defined as destruction involving forty percent (40%) or more of the value of the improvements.

(c)      Taking under eminent domain or other like proceedings.  This Agreement shall terminate with respect to the portion so taken, but shall remain in full force and effect with respect to the balance of the Property; provided, however, that if the taking is of a substantial portion of the Property (twenty percent (20%) or more of the value thereof), this Agreement shall terminate as to all of the Property on the date when said taking occurs.

(d)      Broker is adjudged bankrupt or Broker makes an assignment for the benefit of its creditors or seeks relief from its creditors under any insolvency act.

(e)      Mutual agreement of the Receivership Estate and Broker expressed in writing.

(f)     Thirty (30) days after written notice to terminate this Agreement is given by either party to the other party, which written notice may be given at any time without cause.

(g)     In the event that the Broker shall fail to keep, observe or perform any covenant, term or provision of this Agreement then the Receiver shall have the option to terminate this Agreement, effectively immediately, upon written notice to the Broker.

(h)     Upon the release of the Receiver or termination of the Receivership Estate.

4.     Notwithstanding the foregoing, Receiver may terminate this Agreement, with or without cause, upon thirty (30) days prior written notice to Broker.

5.     **Acceptance by Broker and Duties of Broker.**  Broker hereby accepts such agency and agrees to perform all services appropriate and necessary for the Contemplated Transactions, and Broker shall:

(a)     Use its best efforts to procure purchasers and assist Receiver and its agents (to the extent requested by Receiver) in the negotiation of all Contemplated Transactions.  Receiver shall have the right, in its absolute discretion, to accept or reject any proposed purchaser and terms of sale.

(b)     Maintain an adequate sales staff sufficient to carry out the Contemplated Transactions.

(c)     Advertise and promote the sale of the Property, at Broker's cost, by newspaper advertising, signs (subject to applicable regulations), email blasts, circulars and mailings, including the preparation of a marketing brochure, and by engaging in other appropriate and customary forms of advertising, all of which shall be approved in advance by Receiver for form and content.

(d)     Fully cooperate with other brokers in the marketplace in procuring a buyer and consummating the Contemplated Transactions.

(e)     In the event the Property includes any residential homes, Broker shall be responsible for complying with all disclosures to purchasers that are required (if any), by law or regulation, using industry-standard brokerage forms.

(f)     Perform such other duties as are customarily performed by listing agents selling similar properties.

6.     **Insurance.**  Broker shall maintain commercial general liability insurance containing a per occurrence and in the aggregate limit of at least $2,000,000 protecting against bodily injury, property damage (Broad Form) and personal injury claims arising from the exposures of (a) Premises-operations, (b) independent contractors, and (c) contractual liability risk covering the indemnity obligations set forth in this Agreement.  Receiver shall be named as an additional insured.  Broker shall maintain automobile liability coverage insuring against bodily injury and/or property damage arising out of the operation, maintenance or use of any auto.  Broker shall maintain worker's compensation insurance covering servants and employees engaged in the performance of this Agreement at all times during the term of this Agreement.  Evidence of said insurance satisfactory to Receiver must be provided to Receiver no later than ten days after the Effective Date.  Such insurance shall provide for waiver of subrogation and contain an endorsement specifying that the insurance provided by Broker shall be considered primary, and any other insurance available to Receiver or the Property shall be considered excess as may be applicable to claims arising out of this Agreement.  Broker shall give Receiver immediate notice of any cancellation, nonrenewal or adverse change in the insurance policy required herein.

7.     **Compensation of Broker.**  Receiver shall pay Broker compensation for its services in connection with Contemplated Transactions as follows:

(a)     See Exhibit "B" for compensation details.  The purchase price shall be accepted or rejected in Receiver's absolute discretion.  No commission shall be earned or payable unless and until the close of escrow occurs, as evidenced by the recordation of a deed and the purchase price has been

disbursed pursuant to Receiver's instructions. Receiver may, from time to time, supply Broker with a specific purchase price for use in marketing the Property.

(b) In all co-brokerage situations where a broker other than Broker procures a purchaser and Receiver accepts the Contemplated Transaction, Receiver may, at its option, (a) pay a one-half commission (or other amount as directed by a separate agreement) directly to such co-operating broker and a one-half commission (or other amount as directed by a separate agreement) to Broker, or (b) pay, and only be responsible for, a full commission to Broker, in which case Broker shall share equally its commissions with co-brokers and shall protect, indemnify, defend and hold harmless Receiver with respect to any claim from or by any broker claiming a commission as a result of dealings with Broker in excess of the amounts payable to Broker under this Agreement.

(c) In any situation where the property is foreclosed on by the Plaintiff or if a settlement agreement is reached between the Plaintiff and the Defendant and the Property is returned to the Defendant Broker shall not be compensated.

8.     **Post-Termination/Expiration Commission Rights.** Subject to the terms and conditions of this Agreement, Broker shall be paid a commission if the Property is sold within 60 days after expiration or termination of this Agreement, provided that Broker has properly registered such purchaser with Receiver. As used in the preceding sentence, "registered" shall mean that Broker (or a cooperating broker working with Broker) procured such purchaser, and such purchaser submitted a written proposal or offer to purchase the Property, prior to such expiration or termination of this Agreement.

9.     **Acknowledgment.** Broker acknowledges and agrees that (a) Receiver has been appointed by Court to facilitate the sale of the Property, (b) Receiver is not in the business of developing, and (c) Receiver has not developed and was not involved with any development of the Property or the construction of any improvements thereon. Receiver's duties as to the Property shall be pursuant to the Order, until such time that the receivership is terminated by the Court. Broker acknowledges and agrees that Receiver is not personally liable or responsible for any damages that Broker may suffer as the result of this transaction. Broker further acknowledges and agrees that Receiver's liability for any such damages, if any, is limited to the assets of the Receivership Estate, that the receivership could be terminated at any time, and that Broker can not recover any damages from Receiver upon termination of the receivership. Broker further acknowledges that because the Property is in receivership and in the custody of Receiver, Receiver acts at the direction of the Court and only the Court which confirmed the receivership and issued the order for the Receivership Estate shall have any jurisdiction over any dispute relating to the Property. If for any reason prior to the close of escrow, such receivership is discharged and terminated by the Court, Broker acknowledges and agrees that notwithstanding any provisions in this Agreement to the contrary, this Agreement will terminate upon notice thereof from Receiver to Broker and Receiver shall have no obligation to pay Broker any money or compensation unless Receiver is otherwise instructed by the Court.

10.     **Court Approval of Sale.** This Agreement is subject to the Order and may be subject to final Court approval of the terms and conditions herein. If approval of this Agreement is required by the Court, this Agreement shall have no force or effect until such approval is granted by the Court.

11.     **Notice and Payments.** Any and all notices provided for herein shall be in writing and shall be delivered personally (including via courier) or deposited in the U.S. mail, certified with return receipt requested, postage prepaid and addressed as follows:

To Receiver:     Receivership Estate Over Specific
Assets of DDR MDT MV Anaheim
Hills L.P., et al
12707 High Bluff Drive, Suite 300
San Diego, CA 92130

To Broker:     Cornish & Carey Commercial
Newmark Knight Frank
1601 Response Road, Suite 160
Sacramento, CA 95815

12.    **Assignment.** Broker shall not assign its interest in this Agreement, or any portion thereof, without the written consent of Receiver. Receiver may assign this Agreement without the consent of Broker.

13.    **Entire Agreement; Modification.** This written Agreement constitutes the complete agreement between the parties and supersedes any prior oral or written agreements between the parties regarding the Property. There are no verbal agreements that change this Agreement and no waiver of any of its terms will be effective unless in a written agreement executed by the parties.

14.    **Controlling Law.** This Agreement shall be interpreted under the laws of the jurisdiction of the Court that appointed Receiver for the Receivership Estate and shall be binding on the parties hereto, its successors, assigns, heirs and personal representatives. The parties agree that they shall be subject to the personal jurisdiction of the Court that appointed Receiver for the Receivership Estate and the proper venue shall be in the Court that appointed Receiver for the Receivership Estate.

15.    **Severability.** In the event any term, covenant, condition, provision or agreement herein contained is held to be invalid, void or otherwise unenforceable by any court of competent jurisdiction, the fact that such term, covenant, condition, provision or agreement is invalid, void or otherwise unenforceable shall in no way affect the validity or enforceability of any other term, covenant, condition, provision or agreement herein contained.

16.    **Limitation on Receiver's Liability.** The obligations of Receiver under this Agreement are not personal obligations of the Receiver and Broker shall not look to the personal assets of, nor seek personal recourse against, the Receiver.

17.    **Indemnification.** To the fullest extent permitted by law, Broker agrees to indemnify, protect, defend and hold Receiver, its employees and agents entirely harmless from all liability on account of any and all claims under worker's compensation acts and other employee benefit acts with respect to Broker's employees. Broker shall also indemnify, protect, defend and hold Receiver, its employees and agents entirely harmless from and against any and all liens, claims for loss, expense, damages because of personal injury or death or damages to property, or other costs or charges, directly or indirectly arising out of, in whole or in part, Broker's negligent acts, errors and/or omissions in the performance of his obligations as stated in this Agreement, or the negligent acts, errors and/or omissions of Broker's employees or independent contractors in the performance of their obligations as stated in this Agreement. Broker will defend with counsel reasonably approved by Receiver any and all claims or suits which may be brought or threatened against Receiver or its employees or independent contractors in connection therewith and will pay on behalf of Receiver any expenses which Receiver incurs by reason of such claims (including, but not limited to, court costs or actions). The coverage of such indemnification shall include, without limitation, attorneys' fees and court, arbitration and/or mediation costs incurred by Receiver with regard thereto. Said indemnity shall survive the expiration or termination of this Agreement until such time as action against Receiver on account of any matter covered by this indemnity is barred by the applicable statute of limitations. Such payments on behalf of Receiver shall be in addition to any and all other legal remedies available to Receiver and shall not be considered Receiver's exclusive remedy.

18.    **Representations by Broker.** Broker represents that it is duly licensed and qualified to act as a real estate broker in the State of where the Property is located. Broker represents and warrants to Receiver that Broker will market the Property and otherwise perform Broker's services under this Agreement in accordance with all applicable federal, state and local laws and regulations (including, without limitation, nondiscrimination laws and regulations). Without limiting the foregoing, the parties acknowledge that it is illegal for either Receiver or Broker to refuse to display or sell the Property to any person because of race, color, religion, national origin, sex, marital status or physical disability. Broker acknowledges and agrees that the Receiver desires to have the Property (and improvements thereon, if any) marketed and sold on an absolutely "As-Is; With-All-Faults" basis.

19.    **Cost of Enforcement.** In the event of any action or proceeding between Receiver and Broker to enforce any of the provisions and/or rights under this Agreement or on account of a breach of any term or provision hereof (including without limitation arbitration, mediation and court actions at law or in equity), the unsuccessful party to such action or proceeding agrees to pay to the prevailing party all costs and expenses, including reasonable attorneys' fees, incurred therein by such prevailing party, including any such costs and expenses incurred in any appeal, and if such prevailing party shall recover an award or

judgment in any such action or proceeding, such costs, expenses and fees shall be included in and as a part of such award or judgment.

 IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the Effective Date.

"RECEIVER":

Receivership Estate Over Specific Assets of DDR MDT MV Anaheim Hills L.P., et al
12707 High Bluff Drive, Suite 300
San Diego, CA 92130

By: _____
William J. Hoffman, solely in his capacity as Court Appointed Receiver Over Specific Assets of MDT MV Anaheim Hills L.P., et al
As appointed by the United States District Court Northern District of California in Wells Fargo Bank, N.A. as Trustee, etc., v. DDR MDT MV Anaheim Hills LP, etc., et al.
(Case No. CV 10-3493 EMC)

"BROKER":

Cornish & Carey Commercial Newmark Knight Frank
a 1601 Response Road, Suite 160
  Sacramento, CA 95815

By: _____
Print Name: Sean Fulp
Title: Managing Director

Exhibit A
Property

An approximately 79,080 SF building located at 1010 East Bidwell Street, Folsom, CA 95630 and commonly known as Mervyns at Folsom Square.

Exhibit "B"
Commission

The following commission structure shall be applicable to both individual property sales and grouped property sales and payable only to the listing broker.

- 1.75% of the gross sales price of any sale up to $4,999,999.
- 1.50% of the gross sales price of any sale up to $9,999,999.
- 1.25% of the gross sales price of any sale of $10,000,000 or greater.

The following commission structure shall be available for both individual property sales and grouped property sales and payable only to the buyer's representing broker who shall in no case be affiliated with the listing broker.

- 1% of gross sales price of any other property

## COMMISSION AND LISTING AGREEMENT FOR SALE OF PROPERTY

THIS COMMISSION AND LISTING AGREEMENT FOR SALE OF PROPERTY ("**Agreement**") is made and entered into by and between Receivership Over Specific Assets of DDR MDT MV Anaheim Hills L.P., et al ("**Receiver**"), and _____Cornish & Carey Commercial Newmark Knight Frank_____, ("**Broker**") and is effective as of _December 20th_, 2010 (the "**Effective Date**").

### RECITALS

A.      Receiver is in possession of certain real property fully described in the attached as Exhibit "A" (the "**Property**").

B.      Receiver is duly appointed and acting pursuant to the order (the "**Order**") of United States District Court Northern District of California (the "**Court**") entered on August 24, 2010, in the matter of Wells Fargo bank, N.A., as Trustee v. DDR MDT MC Anaheim Hills LP, etc., et al., filed in such Court under Case No. CV 10-3493 EMC for certain assets in such matter (the "**Receivership Estate**").

C.      The parties hereto desire to enter into an agreement whereby Receiver appoints Broker as Receiver's exclusive listing broker to sell the Property, subject to and in accordance with the terms, covenants, conditions and agreements herein contained.

NOW THEREFORE, in consideration of the foregoing, and in consideration of the mutual terms, covenants, conditions and agreements herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      **Employment of Broker**.  Receiver hereby retains Broker as its exclusive broker upon the conditions and for the compensation hereinafter set forth, to market and sell the Property upon terms and conditions that may be acceptable to Receiver in Receiver's absolute discretion (hereinafter sometimes referred to as the "**Contemplated Transactions**").  Receiver acknowledges that Broker is active in the marketplace and that in some instances Broker may represent prospective purchasers.  Receiver desires that the Property be presented to such persons or entities and, without relieving Broker of any fiduciary obligations, Receiver consents to the dual representation created thereby.  Broker shall not disclose the confidential information of one principal to the other.

2.      **Term of Agency**.  The term of this Agreement shall be for a period of time commencing on the Effective Date and expiring six (6) months and shall continue on a Month to Month basis until terminated in accordance with the provisions of Paragraph 3 hereof.

3.      **Termination**.  Notwithstanding any other provision of this Agreement, the agreements herein contained shall be terminated and the rights and obligations of the parties hereto shall thereupon cease, and an accounting shall be made by Broker to the Estate, upon any of the following circumstances or events:

(a)      Consummation of a bona fide sale of the Property or foreclosure.

(b)      Substantial Destruction of the Property.  For purposes of this Agreement, the term "Substantial Destruction" shall be defined as destruction involving forty percent (40%) or more of the value of the improvements.

(c)      Taking under eminent domain or other like proceedings.  This Agreement shall terminate with respect to the portion so taken, but shall remain in full force and effect with respect to the balance of the Property; provided, however, that if the taking is of a substantial portion of the Property (twenty percent (20%) or more of the value thereof), this Agreement shall terminate as to all of the Property on the date when said taking occurs.

(d)      Broker is adjudged bankrupt or Broker makes an assignment for the benefit of its creditors or seeks relief from its creditors under any insolvency act.

(e)      Mutual agreement of the Receivership Estate and Broker expressed in writing.

TRIGILD
COMMISSION AND LISTING AGREEMENT FOR SALE OF PROPERTY-Mervyns
38584-00001/101210155.1

1

       (f)     Thirty (30) days after written notice to terminate this Agreement is given by either party to the other party, which written notice may be given at any time without cause.

       (g)     In the event that the Broker shall fail to keep, observe or perform any covenant, term or provision of this Agreement then the Receiver shall have the option to terminate this Agreement, effectively immediately, upon written notice to the Broker.

       (h)     Upon the release of the Receiver or termination of the Receivership Estate.

    4.     Notwithstanding the foregoing, Receiver may terminate this Agreement, with or without cause, upon thirty (30) days prior written notice to Broker.

    5.     **Acceptance by Broker and Duties of Broker.**  Broker hereby accepts such agency and agrees to perform all services appropriate and necessary for the Contemplated Transactions, and Broker shall:

       (a)     Use its best efforts to procure purchasers and assist Receiver and its agents (to the extent requested by Receiver) in the negotiation of all Contemplated Transactions.  Receiver shall have the right, in its absolute discretion, to accept or reject any proposed purchaser and terms of sale.

       (b)     Maintain an adequate sales staff sufficient to carry out the Contemplated Transactions.

       (c)     Advertise and promote the sale of the Property, at Broker's cost, by newspaper advertising, signs (subject to applicable regulations), email blasts, circulars and mailings, including the preparation of a marketing brochure, and by engaging in other appropriate and customary forms of advertising, all of which shall be approved in advance by Receiver for form and content.

       (d)     Fully cooperate with other brokers in the marketplace in procuring a buyer and consummating the Contemplated Transactions.

       (e)     In the event the Property includes any residential homes, Broker shall be responsible for complying with all disclosures to purchasers that are required (if any), by law or regulation, using industry-standard brokerage forms.

       (f)     Perform such other duties as are customarily performed by listing agents selling similar properties.

    6.     **Insurance.**  Broker shall maintain commercial general liability insurance containing a per occurrence and in the aggregate limit of at least $2,000,000 protecting against bodily injury, property damage (Broad Form) and personal injury claims arising from the exposures of (a) Premises-operations, (b) independent contractors, and (c) contractual liability risk covering the indemnity obligations set forth in this Agreement.  Receiver shall be named as an additional insured.  Broker shall maintain automobile liability coverage insuring against bodily injury and/or property damage arising out of the operation, maintenance or use of any auto.  Broker shall maintain worker's compensation insurance covering servants and employees engaged in the performance of this Agreement at all times during the term of this Agreement.  Evidence of said insurance satisfactory to Receiver must be provided to Receiver no later than ten days after the Effective Date.  Such insurance shall provide for waiver of subrogation and contain an endorsement specifying that the insurance provided by Broker shall be considered primary, and any other insurance available to Receiver or the Property shall be considered excess as may be applicable to claims arising out of this Agreement.  Broker shall give Receiver immediate notice of any cancellation, nonrenewal or adverse change in the insurance policy required herein.

    7.     **Compensation of Broker.**  Receiver shall pay Broker compensation for its services in connection with Contemplated Transactions as follows:

       (a)     See Exhibit "B" for compensation details.  The purchase price shall be accepted or rejected in Receiver's absolute discretion.  No commission shall be earned or payable unless and until the close of escrow occurs, as evidenced by the recordation of a deed and the purchase price has been

disbursed pursuant to Receiver's instructions. Receiver may, from time to time, supply Broker with a specific purchase price for use in marketing the Property.

(b) In all co-brokerage situations where a broker other than Broker procures a purchaser and Receiver accepts the Contemplated Transaction, Receiver may, at its option, (a) pay a one-half commission (or other amount as directed by a separate agreement) directly to such co-operating broker and a one-half commission (or other amount as directed by a separate agreement) to Broker, or (b) pay, and only be responsible for, a full commission to Broker, in which case Broker shall share equally its commissions with co-brokers and shall protect, indemnify, defend and hold harmless Receiver with respect to any claim from or by any broker claiming a commission as a result of dealings with Broker in excess of the amounts payable to Broker under this Agreement.

(c) In any situation where the property is foreclosed on by the Plaintiff or if a settlement agreement is reached between the Plaintiff and the Defendant and the Property is returned to the Defendant Broker shall not be compensated.

8. **Post-Termination/Expiration Commission Rights.** Subject to the terms and conditions of this Agreement, Broker shall be paid a commission if the Property is sold within 60 days after expiration or termination of this Agreement, provided that Broker has properly registered such purchaser with Receiver. As used in the preceding sentence, "registered" shall mean that Broker (or a cooperating broker working with Broker) procured such purchaser, and such purchaser submitted a written proposal or offer to purchase the Property, prior to such expiration or termination of this Agreement.

9. **Acknowledgment.** Broker acknowledges and agrees that (a) Receiver has been appointed by Court to facilitate the sale of the Property, (b) Receiver is not in the business of developing, and (c) Receiver has not developed and was not involved with any development of the Property or the construction of any improvements thereon. Receiver's duties as to the Property shall be pursuant to the Order, until such time that the receivership is terminated by the Court. Broker acknowledges and agrees that Receiver is not personally liable or responsible for any damages that Broker may suffer as the result of this transaction. Broker further acknowledges and agrees that Receiver's liability for any such damages, if any, is limited to the assets of the Receivership Estate, that the receivership could be terminated at any time, and that Broker can not recover any damages from Receiver upon termination of the receivership. Broker further acknowledges that because the Property is in receivership and in the custody of Receiver, Receiver acts at the direction of the Court and only the Court which confirmed the receivership and issued the order for the Receivership Estate shall have any jurisdiction over any dispute relating to the Property. If for any reason prior to the close of escrow, such receivership is discharged and terminated by the Court, Broker acknowledges and agrees that notwithstanding any provisions in this Agreement to the contrary, this Agreement will terminate upon notice thereof from Receiver to Broker and Receiver shall have no obligation to pay Broker any money or compensation unless Receiver is otherwise instructed by the Court.

10. **Court Approval of Sale.** This Agreement is subject to the Order and may be subject to final Court approval of the terms and conditions herein. If approval of this Agreement is required by the Court, this Agreement shall have no force or effect until such approval is granted by the Court.

11. **Notice and Payments.** Any and all notices provided for herein shall be in writing and shall be delivered personally (including via courier) or deposited in the U.S. mail, certified with return receipt requested, postage prepaid and addressed as follows:

To Receiver:  Receivership Estate Over Specific
Assets of DDR MDT MV Anaheim
Hills L.P., et al
12707 High Bluff Drive, Suite 300
San Diego, CA 92130


To Broker:  Cornish & Carey Commercial
Newmark Knight Frank
1601 Response Road, Suite 160
Sacramento, CA 95815

TRIGILD
COMMISSION AND LISTING AGREEMENT FOR SALE OF PROPERTY-Mervyns
38584-00001/101210155.1

12.     **Assignment.** Broker shall not assign its interest in this Agreement, or any portion thereof, without the written consent of Receiver. Receiver may assign this Agreement without the consent of Broker.

13.     **Entire Agreement; Modification.** This written Agreement constitutes the complete agreement between the parties and supersedes any prior oral or written agreements between the parties regarding the Property. There are no verbal agreements that change this Agreement and no waiver of any of its terms will be effective unless in a written agreement executed by the parties.

14.     **Controlling Law.** This Agreement shall be interpreted under the laws of the jurisdiction of the Court that appointed Receiver for the Receivership Estate and shall be binding on the parties hereto, its successors, assigns, heirs and personal representatives. The parties agree that they shall be subject to the personal jurisdiction of the Court that appointed Receiver for the Receivership Estate and the proper venue shall be in the Court that appointed Receiver for the Receivership Estate.

15.     **Severability.** In the event any term, covenant, condition, provision or agreement herein contained is held to be invalid, void or otherwise unenforceable by any court of competent jurisdiction, the fact that such term, covenant, condition, provision or agreement is invalid, void or otherwise unenforceable shall in no way affect the validity or enforceability of any other term, covenant, condition, provision or agreement herein contained.

16.     **Limitation on Receiver's Liability.** The obligations of Receiver under this Agreement are not personal obligations of the Receiver and Broker shall not look to the personal assets of, nor seek personal recourse against, the Receiver.

17.     **Indemnification.** To the fullest extent permitted by law, Broker agrees to indemnify, protect, defend and hold Receiver, its employees and agents entirely harmless from all liability on account of any and all claims under worker's compensation acts and other employee benefit acts with respect to Broker's employees. Broker shall also indemnify, protect, defend and hold Receiver, its employees and agents entirely harmless from and against any and all liens, claims for loss, expense, damages because of personal injury or death or damages to property, or other costs or charges, directly or indirectly arising out of, in whole or in part, Broker's negligent acts, errors and/or omissions in the performance of his obligations as stated in this Agreement, or the negligent acts, errors and/or omissions of Broker's employees or independent contractors in the performance of their obligations as stated in this Agreement. Broker will defend with counsel reasonably approved by Receiver any and all claims or suits which may be brought or threatened against Receiver or its employees or independent contractors in connection therewith and will pay on behalf of Receiver any expenses which Receiver incurs by reason of such claims (including, but not limited to, court costs or actions). The coverage of such indemnification shall include, without limitation, attorneys' fees and court, arbitration and/or mediation costs incurred by Receiver with regard thereto. Said indemnity shall survive the expiration or termination of this Agreement until such time as action against Receiver on account of any matter covered by this indemnity is barred by the applicable statute of limitations. Such payments on behalf of Receiver shall be in addition to any and all other legal remedies available to Receiver and shall not be considered Receiver's exclusive remedy.

18.     **Representations by Broker.** Broker represents that it is duly licensed and qualified to act as a real estate broker in the State of where the Property is located. Broker represents and warrants to Receiver that Broker will market the Property and otherwise perform Broker's services under this Agreement in accordance with all applicable federal, state and local laws and regulations (including, without limitation, nondiscrimination laws and regulations). Without limiting the foregoing, the parties acknowledge that it is illegal for either Receiver or Broker to refuse to display or sell the Property to any person because of race, color, religion, national origin, sex, marital status or physical disability. Broker acknowledges and agrees that the Receiver desires to have the Property (and improvements thereon, if any) marketed and sold on an absolutely "As-Is; With-All-Faults" basis.

19.     **Cost of Enforcement.** In the event of any action or proceeding between Receiver and Broker to enforce any of the provisions and/or rights under this Agreement or on account of a breach of any term or provision hereof (including without limitation arbitration, mediation and court actions at law or in equity), the unsuccessful party to such action or proceeding agrees to pay to the prevailing party all costs and expenses, including reasonable attorneys' fees, incurred therein by such prevailing party, including any such costs and expenses incurred in any appeal, and if such prevailing party shall recover an award or

TRIGILD
COMMISSION AND LISTING AGREEMENT FOR SALE OF PROPERTY-Mervyns
38584-00001/101210155.1

4

judgment in any such action or proceeding, such costs, expenses and fees shall be included in and as a part of such award or judgment.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the Effective Date.

"RECEIVER":

Receivership Estate Over Specific Assets of DDR
MDT MV Anaheim Hills L.P., et al
12707 High Bluff Drive, Suite 300
San Diego, CA 92130

By: _____
William J. Hoffman, solely in his capacity as Court
Appointed Receiver Over Specific Assets of MDT
MV Anaheim Hills L.P., et al
As appointed by the United States District Court
Northern District of California in Wells Fargo Bank,
N.A. as Trustee, etc., v. DDR MDT MV Anaheim
Hills LP, etc., et al.
(Case No. CV 10-3493 EMC)

"BROKER":

Cornish & Carey Commercial Newmark Knight Frank
a 1601 Response Road, Suite 160
   Sacramento, CA 95815

By: _____
Print Name: Sean Fulp
Title: Managing Director

Exhibit A
Property

An approximately 62,214 SF building located at 1151 Sanguinetti Road, Sonora, CA 95370 and commonly known as Mervyns at Sonora Crossroads Shopping Center.

Exhibit "B"
Commission

The following commission structure shall be applicable to both individual property sales and grouped property sales and payable only to the listing broker.

- 1.75% of the gross sales price of any sale up to $4,999,999.
- 1.50% of the gross sales price of any sale up to $9,999,999.
- 1.25% of the gross sales price of any sale of $10,000,000 or greater.

The following commission structure shall be available for both individual property sales and grouped property sales and payable only to the buyer's representing broker who shall in no case be affiliated with the listing broker.

- 1% of gross sales price of any other property

## COMMISSION AND LISTING AGREEMENT FOR SALE OF PROPERTY

THIS COMMISSION AND LISTING AGREEMENT FOR SALE OF PROPERTY ("**Agreement**") is made and entered into by and between Receivership Over Specific Assets of DDR MDT MV Anaheim Hills L.P., et al ("**Receiver**"), and _____FARIS Lee INVestments_____; ("**Broker**") and is effective as of ____12 - 04____, 2010 (the "**Effective Date**").

### RECITALS

A.      Receiver is in possession of certain real property fully described in the attached as Exhibit "A" (the "**Property**").

B.      Receiver is duly appointed and acting pursuant to the order (the "**Order**") of United States District Court Northern District of California (the "**Court**") entered on August 24, 2010, in the matter of Wells Fargo bank, N.A., as Trustee v. DDR MDT MC Anaheim Hills LP, etc., et al., filed in such Court under Case No. CV 10-3493 EMC for certain assets in such matter (the "**Receivership Estate**").

C.      The parties hereto desire to enter into an agreement whereby Receiver appoints Broker as Receiver's exclusive listing broker to sell the Property, subject to and in accordance with the terms, covenants, conditions and agreements herein contained.

NOW THEREFORE, in consideration of the foregoing, and in consideration of the mutual terms, covenants, conditions and agreements herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      **Employment of Broker.**  Receiver hereby retains Broker as its exclusive broker upon the conditions and for the compensation hereinafter set forth, to market and sell the Property upon terms and conditions that may be acceptable to Receiver in Receiver's absolute discretion (hereinafter sometimes referred to as the "**Contemplated Transactions**").  Receiver acknowledges that Broker is active in the marketplace and that in some instances Broker may represent prospective purchasers.  Receiver desires that the Property be presented to such persons or entities and, without relieving Broker of any fiduciary obligations, Receiver consents to the dual representation created thereby.  Broker shall not disclose the confidential information of one principal to the other.

2.      **Term of Agency.**  The term of this Agreement shall be for a period of time commencing on the Effective Date and expiring six (6) months and shall continue on a Month to Month basis until terminated in accordance with the provisions of Paragraph 3  hereof.

3.      **Termination.**  Notwithstanding any other provision of this Agreement, the agreements herein contained shall be terminated and the rights and obligations of the parties hereto shall thereupon cease, and an accounting shall be made by Broker to the Estate, upon any of the following circumstances or events:

(a)      Consummation of a bona fide sale of the Property or foreclosure.

(b)      Substantial Destruction of the Property.  For purposes of this Agreement, the term "Substantial Destruction" shall be defined as destruction involving forty percent (40%) or more of the value of the improvements.

(c)      Taking under eminent domain or other like proceedings.  This Agreement shall terminate with respect to the portion so taken, but shall remain in full force and effect with respect to the balance of the Property; provided, however, that if the taking is of a substantial portion of the Property (twenty percent (20%) or more of the value thereof), this Agreement shall terminate as to all of the Property on the date when said taking occurs.

(d)      Broker is adjudged bankrupt or Broker makes an assignment for the benefit of its creditors or seeks relief from its creditors under any insolvency act.

(e)      Mutual agreement of the Receivership Estate and Broker expressed in writing.



(f)      Thirty (30) days after written notice to terminate this Agreement is given by either party to the other party, which written notice may be given at any time without cause.

(g)      In the event that the Broker shall fail to keep, observe or perform any covenant, term or provision of this Agreement then the Receiver shall have the option to terminate this Agreement, effectively immediately, upon written notice to the Broker.

(h)      Upon the release of the Receiver or termination of the Receivership Estate.

4.      Notwithstanding the foregoing, Receiver may terminate this Agreement, with or without cause, upon thirty (30) days prior written notice to Broker.

5.      **Acceptance by Broker and Duties of Broker.**  Broker hereby accepts such agency and agrees to perform all services appropriate and necessary for the Contemplated Transactions, and Broker shall:

(a)      Use its best efforts to procure purchasers and assist Receiver and its agents (to the extent requested by Receiver) in the negotiation of all Contemplated Transactions.  Receiver shall have the right, in its absolute discretion, to accept or reject any proposed purchaser and terms of sale.

(b)      Maintain an adequate sales staff sufficient to carry out the Contemplated Transactions.

(c)      Advertise and promote the sale of the Property, at Broker's cost, by newspaper advertising, signs (subject to applicable regulations), email blasts, circulars and mailings, including the preparation of a marketing brochure, and by engaging in other appropriate and customary forms of advertising, all of which shall be approved in advance by Receiver for form and content.

(d)      Fully cooperate with other brokers in the marketplace in procuring a buyer and consummating the Contemplated Transactions.

(e)      In the event the Property includes any residential homes, Broker shall be responsible for complying with all disclosures to purchasers that are required (if any), by law or regulation, using industry-standard brokerage forms.

(f) .     Perform such other duties as are customarily performed by listing agents selling similar properties.

6.      **Insurance.**  Broker shall maintain commercial general liability insurance containing a per occurrence and in the aggregate limit of at least $2,000,000 protecting against bodily injury, property damage (Broad Form) and personal injury claims arising from the exposures of (a) Premises-operations, (b) independent contractors, and (c) contractual liability risk covering the indemnity obligations set forth in this Agreement.  Receiver shall be named as an additional insured.  Broker shall maintain automobile liability coverage insuring against bodily injury and/or property damage arising out of the operation, maintenance or use of any auto.  Broker shall maintain worker's compensation insurance covering servants and employees engaged in the performance of this Agreement at all times during the term of this Agreement.  Evidence of said insurance satisfactory to Receiver must be provided to Receiver no later than ten days after the Effective Date.  · Such insurance shall provide for waiver of subrogation and contain an endorsement specifying that the insurance provided by Broker shall be considered primary, and any other insurance available to Receiver or the Property shall be considered excess as may be applicable to claims arising out of this Agreement.  Broker shall give Receiver immediate notice of any cancellation, nonrenewal or adverse change in the insurance policy required herein.

7.      **Compensation of Broker.**  Receiver shall pay Broker compensation for its services in connection with Contemplated Transactions as follows:

(a)      See Exhibit "B" for compensation details.  The purchase price shall be accepted or rejected in Receiver's absolute discretion.  No commission shall be earned or payable unless and until the close of escrow occurs, as evidenced by the recordation of a deed and the purchase price has been



disbursed pursuant to Receiver's instructions.  Receiver may, from time to time, supply Broker with a specific purchase price for use in marketing the Property.

(b)   ~~In all co-brokerage situations where a broker other than Broker procures a purchaser and Receiver accepts the Contemplated Transaction, Receiver may, at its option, (a) pay a one-half commission (or other amount as directed by a separate agreement) directly to such co-operating broker and a one-half commission (or other amount as directed by a separate agreement) to Broker, or (b) pay, and only be responsible for, a full commission to Broker, in which case Broker shall share equally its commissions with co-brokers and shall protect, indemnify, defend and hold harmless Receiver with respect to any claim from or by any broker claiming a commission as a result of dealings with Broker in excess of the amounts payable to Broker under this Agreement.~~  See Exhibit "B".

(c)   In any situation where the property is foreclosed on by the Plaintiff or if a settlement agreement is reached between the Plaintiff and the Defendant and the Property is returned to the Defendant Broker shall not be compensated.

8.   **Post-Termination/Expiration Commission Rights.**  Subject to the terms and conditions of this Agreement, Broker shall be paid a commission if the Property is sold within 60 days after expiration or termination of this Agreement, provided that Broker has properly registered such purchaser with Receiver. As used in the preceding sentence, "registered" shall mean that Broker (or a cooperating broker working with Broker) procured such purchaser, and such purchaser submitted a written proposal or offer to purchase the Property, prior to such expiration or termination of this Agreement.

9.   **Acknowledgment.**  Broker acknowledges and agrees that (a) Receiver has been appointed by Court to facilitate the sale of the Property, (b) Receiver is not in the business of developing, and (c) Receiver has not developed and was not involved with any development of the Property or the construction of any improvements thereon.  Receiver's duties as to the Property shall be pursuant to the Order, until such time that the receivership is terminated by the Court.  Broker acknowledges and agrees that Receiver is not personally liable or responsible for any damages that Broker may suffer as the result of this transaction.  Broker further acknowledges and agrees that Receiver's liability for any such damages, if any, is limited to the assets of the Receivership Estate, that the receivership could be terminated at any time, and that Broker can not recover any damages from Receiver upon termination of the receivership. Broker further acknowledges that because the Property is in receivership and in the custody of Receiver, Receiver acts at the direction of the Court and only the Court which confirmed the receivership and issued the order for the Receivership Estate shall have any jurisdiction over any dispute relating to the Property.  If for any reason prior to the close of escrow, such receivership is discharged and terminated by the Court, Broker acknowledges and agrees that notwithstanding any provisions in this Agreement to the contrary, this Agreement will terminate upon notice thereof from Receiver to Broker and Receiver shall have no obligation to pay Broker any money or compensation unless Receiver is otherwise instructed by the Court.

10.   **Court Approval of Sale.**  This Agreement is subject to the Order and may be subject to final Court approval of the terms and conditions herein.  If approval of this Agreement is required by the Court, this Agreement shall have no force or effect until such approval is granted by the Court.

11.   **Notice and Payments.** Any and all notices provided for herein shall be in writing and shall be delivered personally (including via courier) or deposited in the U.S. mail, certified with return receipt requested, postage prepaid and addressed as follows:

To Receiver:   Receivership Estate Over Specific
Assets of DDR MDT MV Anaheim
Hills L.P., et al
12707 High Bluff Drive, Suite 300
San Diego, CA 92130

To Broker:   Richard J. Walter, President
Faris Lee Investments
2301 Dupont Drive, Ste 100
Irvine, CA 92612



12.     **Assignment.**  Broker shall not assign its interest in this Agreement, or any portion thereof, without the written consent of Receiver.  Receiver may assign this Agreement without the consent of Broker.

13.     **Entire Agreement; Modification.**   This written Agreement constitutes the complete agreement between the parties and supersedes any prior oral or written agreements between the parties regarding the Property.  There are no verbal agreements that change this Agreement and no waiver of any of its terms will be effective unless in a written agreement executed by the parties.

14.     **Controlling Law.**  This Agreement shall be interpreted under the laws of the jurisdiction of the Court that appointed Receiver for the Receivership Estate and shall be binding on the parties hereto, its successors, assigns, heirs and personal representatives.  The parties agree that they shall be subject to the personal jurisdiction of the Court that appointed Receiver for the Receivership Estate and the proper venue shall be in the Court that appointed Receiver for the Receivership Estate.

15.     **Severability.**  In the event any term, covenant, condition, provision or agreement herein contained is held to be invalid, void or otherwise unenforceable by any court of competent jurisdiction, the fact that such term, covenant, condition, provision or agreement is invalid, void or otherwise unenforceable shall in no way affect the validity or enforceability of any other term, covenant, condition, provision or agreement herein contained.

16.     **Limitation on Receiver's Liability.**  The obligations of Receiver under this Agreement are not personal obligations of the Receiver and Broker shall not look to the personal assets of, nor seek personal recourse against, the Receiver.

17.     **Indemnification.**  To the fullest extent permitted by law, Broker agrees to indemnify, protect, defend and hold Receiver, its employees and agents entirely harmless from all liability on account of any and all claims under worker's compensation acts and other employee benefit acts with respect to Broker's employees.  Broker shall also indemnify, protect, defend and hold Receiver, its employees and agents entirely harmless from and against any and all liens, claims for loss, expense, damages because of personal injury or death or damages to property, or other costs or charges, directly or indirectly arising out of, in whole or in part, Broker's negligent acts, errors and/or omissions in the performance of his obligations as stated in this Agreement, or the negligent acts, errors and/or omissions of Broker's employees or independent contractors in the performance of their obligations as stated in this Agreement.  Broker will defend with counsel reasonably approved by Receiver any and all claims or suits which may be brought or threatened against Receiver or its employees or independent contractors in connection therewith and will pay on behalf of Receiver any expenses which Receiver incurs by reason of such claims (including, but not limited to, court costs or actions).  The coverage of such indemnification shall include, without limitation, attorneys' fees and court, arbitration and/or mediation costs incurred by Receiver with regard thereto.  Said indemnity shall survive the expiration or termination of this Agreement until such time as action against Receiver on account of any matter covered by this indemnity is barred by the applicable statute of limitations.  Such payments on behalf of Receiver shall be in addition  to any and all other legal remedies available to Receiver and shall not be considered Receiver's exclusive remedy.

18.     **Representations by Broker.**  Broker represents that it is duly licensed and qualified to act as a real estate broker in the State of where the Property is located.  Broker represents and warrants to Receiver that Broker will market the Property and otherwise perform Broker's services under this Agreement in accordance with all applicable federal, state and local laws and regulations (including, without limitation, nondiscrimination laws and regulations).  Without limiting the foregoing, the parties acknowledge that it is illegal for either Receiver or Broker to refuse to display or sell the Property to any person because of race, color, religion, national origin, sex, marital status or physical disability.  Broker acknowledges and agrees that the Receiver desires to have the Property (and improvements thereon, if any) marketed and sold on an absolutely "As-Is; With-All-Faults" basis.

19.     **Cost of Enforcement.**  In the event of any action or proceeding between Receiver and Broker to enforce any of the provisions and/or rights under this Agreement or on account of a breach of any term or provision hereof (including without limitation arbitration, mediation and court actions at law or in equity), the unsuccessful party to such action or proceeding agrees to pay to the prevailing party all costs and expenses, including reasonable attorneys' fees, incurred therein by such prevailing party, including any such costs and expenses incurred in any appeal, and if such prevailing party shall recover an award or

judgment in any such action or proceeding, such costs, expenses and fees shall be included in and as a part of such award or judgment.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the Effective Date.

"RECEIVER":

Receivership Estate Over Specific Assets of DDR
MDT MV Anaheim Hills L.P., et al
12707 High Bluff Drive, Suite 300
San Diego, CA 92130

By: _____

William J. Hoffman, solely in his capacity as Court
Appointed Receiver Over Specific Assets of MDT
MV Anaheim Hills L.P., et al
As appointed by the United States District Court
Northern District of California in Wells Fargo Bank,
N.A. as Trustee, etc., v. DDR MDT MV Anaheim
Hills LP, etc., et al.
(Case No. CV 10-3493 EMC)

"BROKER":

Faris & Lee Investments
a California Corporation

By: _____

Print Name: Richard J. Walter
Title: President

Exhibit "A"
Property List

The following is a list of the Property:

1. An approximately 77,883 sf building located at 8100 E. Santa Ana Canyon Road, Anaheim, CA 92808 and commonly known as Mervyns at Anaheim Hills Center.
2. An approximately 89,201 sf building located at 245 E. Magnolia Blvd, Burbank, CA 91502 and commonly known as Mervyns at Burbank Town Center.
3. An approximately 81,282 sf building located at 5517 Philadelphia st, Chino, CA 91710 and commonly known as Mervyns at Chino Town Square.
4. An approximately 77,934 sf building located at 26732 Portola Pkwy, Foothill Ranch, CA 92610 and commonly known as Mervyns at Foothill Ranch.
5. An approximately 83,731 sf building located at 13092 Harbor Blvd, Garden Grove, CA 92843 and commonly known as Mervyns at Garden Grove Center.
6. An approximately 62,523 sf building located at 1600 North H St, Lompoc, CA 93436 and commonly known as Mervyns at Albertson's Shopping Center.
7. An approximately 76,550 sf building located at 1305 West Rancho Vista Blvd, Palmdale, CA 93551 and commonly known as Mervyns at Antelope Valley Mall.
8. An approximately 84,886 sf building located at 201 Town Center Drive W, Santa Maria, CA 93458 and commonly known as Mervyns at Towne Center West.
9. An approximately 76,126 sf building located at 3660 S. 16th Avenue, Tuscon, AZ 85713 and commonly known as Mervyns at Santa Cruz Plaza.
10. An approximately 74,862 sf building located at 2992 N. Alma School Rd., Chandler, AZ 85224 and commonly known as Mervyn's Plaza.
11. An approximately 86,858 sf building located at 6505 E. Southern Avenue, Mesa, AZ 85206 and commonly known as Mervyns at Superstition Springs.
12. An approximately 81,009 sf building located at 4255 W. Thunderbird Rd., Phoenix, AZ 85053 and commonly known as Mervyns at Deer Valley.
13. An approximately 76,214 sf building located at 4710 East Bay Rd, Phoenix, AZ 85044 and commonly known as Mervyns at Silver Creek Plaza.



Exhibit "B"
Commission

The following commission structure shall be applicable to both individual property sales and grouped property sales and payable only to the listing broker.

- 1.75% of the gross sales price of any sale up to $4,999,999.
- 1.50% of the gross sales price of any sale up to $9,999,999.
- 1.25% of the gross sales price of any sale of $10,000,000 or greater.

The following commission structure shall be available for both individual property sales and grouped property sales and payable only to the buyer's representing broker who shall in no case be affiliated with the listing broker.

- 0.75% of gross sales price of the property known as Burbank
- 1% of gross sales price of any other property



Schedule "C"
Excluded Buyers

The following buyers will be excluded from this listing agreement for the following property as follows.

- Kohl's shall be excluded from this listing agreement for the property located in Lompoc, CA.

## COMMISSION AND LISTING AGREEMENT FOR SALE OF PROPERTY

THIS COMMISSION AND LISTING AGREEMENT FOR SALE OF PROPERTY ("**Agreement**") is made and entered into by and between Receivership Over Specific Assets of DDR MDT MV Anaheim Hills L.P., et al ("**Receiver**"), and _Faris Lee Investments Inc., A California Corporation_, ("**Broker**") and is effective as of _____January 25th_____, 2011 (the "**Effective Date**").

### RECITALS

A.   Receiver is in possession of certain real property fully described in the attached as Exhibit "A" (the "**Property**").

B.   Receiver is duly appointed and acting pursuant to the order (the "**Order**") of United States District Court Northern District of California (the "**Court**") entered on August 24, 2010, in the matter of Wells Fargo bank, N.A., as Trustee v. DDR MDT MC Anaheim Hills LP, etc., et al., filed in such Court under Case No. CV 10-3493 EMC for certain assets in such matter (the "**Receivership Estate**").

C.   The parties hereto desire to enter into an agreement whereby Receiver appoints Broker as Receiver's exclusive listing broker to sell the Property, subject to and in accordance with the terms, covenants, conditions and agreements herein contained.

NOW THEREFORE, in consideration of the foregoing, and in consideration of the mutual terms, covenants, conditions and agreements herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.   **Employment of Broker.** Receiver hereby retains Broker as its exclusive broker upon the conditions and for the compensation hereinafter set forth, to market and sell the Property upon terms and conditions that may be acceptable to Receiver in Receiver's absolute discretion (hereinafter sometimes referred to as the "**Contemplated Transactions**"). Receiver acknowledges that Broker is active in the marketplace and that in some instances Broker may represent prospective purchasers. Receiver desires that the Property be presented to such persons or entities and, without relieving Broker of any fiduciary obligations, Receiver consents to the dual representation created thereby. Broker shall not disclose the confidential information of one principal to the other.

2.   **Term of Agency.** The term of this Agreement shall be for a period of time commencing on the Effective Date and expiring six (6) months and shall continue on a Month to Month basis until terminated in accordance with the provisions of Paragraph 3 hereof.

3.   **Termination.** Notwithstanding any other provision of this Agreement, the agreements herein contained shall be terminated and the rights and obligations of the parties hereto shall thereupon cease, and an accounting shall be made by Broker to the Estate, upon any of the following circumstances or events:

(a)   Consummation of a bona fide sale of the Property or foreclosure.

(b)   Substantial Destruction of the Property. For purposes of this Agreement, the term "Substantial Destruction" shall be defined as destruction involving forty percent (40%) or more of the value of the improvements.

(c)   Taking under eminent domain or other like proceedings. This Agreement shall terminate with respect to the portion so taken, but shall remain in full force and effect with respect to the balance of the Property; provided, however, that if the taking is of a substantial portion of the Property (twenty percent (20%) or more of the value thereof), this Agreement shall terminate as to all of the Property on the date when said taking occurs.

(d)   Broker is adjudged bankrupt or Broker makes an assignment for the benefit of its creditors or seeks relief from its creditors under any insolvency act.

(e)   Mutual agreement of the Receivership Estate and Broker expressed in writing.

(f)     Thirty (30) days after written notice to terminate this Agreement is given by either party to the other party, which written notice may be given at any time without cause.

(g)     In the event that the Broker shall fail to keep, observe or perform any covenant, term or provision of this Agreement then the Receiver shall have the option to terminate this Agreement, effectively immediately, upon written notice to the Broker.

(h)     Upon the release of the Receiver or termination of the Receivership Estate.

4.      Notwithstanding the foregoing, Receiver may terminate this Agreement, with or without cause, upon thirty (30) days prior written notice to Broker.

5.      **Acceptance by Broker and Duties of Broker.**  Broker hereby accepts such agency and agrees to perform all services appropriate and necessary for the Contemplated Transactions, and Broker shall:

(a)     Use its best efforts to procure purchasers and assist Receiver and its agents (to the extent requested by Receiver) in the negotiation of all Contemplated Transactions.  Receiver shall have the right, in its absolute discretion, to accept or reject any proposed purchaser and terms of sale.

(b)     Maintain an adequate sales staff sufficient to carry out the Contemplated Transactions.

(c)     Advertise and promote the sale of the Property, at Broker's cost, by newspaper advertising, signs (subject to applicable regulations), email blasts, circulars and mailings, including the preparation of a marketing brochure, and by engaging in other appropriate and customary forms of advertising, all of which shall be approved in advance by Receiver for form and content.

(d)     Fully cooperate with other brokers in the marketplace in procuring a buyer and consummating the Contemplated Transactions.

(e)     In the event the Property includes any residential homes, Broker shall be responsible for complying with all disclosures to purchasers that are required (if any), by law or regulation, using industry-standard brokerage forms.

(f)     Perform such other duties as are customarily performed by listing agents selling similar properties.

6.      **Insurance.**  Broker shall maintain commercial general liability insurance containing a per occurrence and in the aggregate limit of at least $2,000,000 protecting against bodily injury, property damage (Broad Form) and personal injury claims arising from the exposures of (a) Premises-operations, (b) independent contractors, and (c) contractual liability risk covering the indemnity obligations set forth in this Agreement.  Receiver shall be named as an additional insured.  Broker shall maintain automobile liability coverage insuring against bodily injury and/or property damage arising out of the operation, maintenance or use of any auto.  Broker shall maintain worker's compensation insurance covering servants and employees engaged in the performance of this Agreement at all times during the term of this Agreement.  Evidence of said insurance satisfactory to Receiver must be provided to Receiver no later than ten days after the Effective Date.  Such insurance shall provide for waiver of subrogation and contain an endorsement specifying that the insurance provided by Broker shall be considered primary, and any other insurance available to Receiver or the Property shall be considered excess as may be applicable to claims arising out of this Agreement.  Broker shall give Receiver immediate notice of any cancellation, nonrenewal or adverse change in the insurance policy required herein.

7.      **Compensation of Broker.**  Receiver shall pay Broker compensation for its services in connection with Contemplated Transactions as follows:

(a)     See Exhibit "B" for compensation details.  The purchase price shall be accepted or rejected in Receiver's absolute discretion.  No commission shall be earned or payable unless and until the close of escrow occurs, as evidenced by the recordation of a deed and the purchase price has been

disbursed pursuant to Receiver's instructions.  Receiver may, from time to time, supply Broker with a specific purchase price for use in marketing the Property.

~~(b)     In all co-brokerage situations where a broker other than Broker procures a purchaser and Receiver accepts the Contemplated Transaction, Receiver may, at its option, (a) pay a one-half commission (or other amount as directed by a separate agreement) directly to such co-operating broker and a one-half commission (or other amount as directed by a separate agreement) to Broker, or (b) pay, and only be responsible for, a full commission to Broker, in which case Broker shall share equally its commissions with co-brokers and shall protect, indemnify, defend and hold harmless Receiver with respect to any claim from or by any broker claiming a commission as a result of dealings with Broker in excess of the amounts payable to Broker under this Agreement.~~  See Exhibit B

(c)     In any situation where the property is foreclosed on by the Plaintiff or if a settlement agreement is reached between the Plaintiff and the Defendant and the Property is returned to the Defendant Broker shall not be compensated.

8.     **Post-Termination/Expiration Commission Rights**.  Subject to the terms and conditions of this Agreement, Broker shall be paid a commission if the Property is sold within 60 days after expiration or termination of this Agreement, provided that Broker has properly registered such purchaser with Receiver.  As used in the preceding sentence, "registered" shall mean that Broker (or a cooperating broker working with Broker) procured such purchaser, and such purchaser submitted a written proposal or offer to purchase the Property, prior to such expiration or termination of this Agreement.

9.     **Acknowledgment**.  Broker acknowledges and agrees that (a) Receiver has been appointed by Court to facilitate the sale of the Property, (b) Receiver is not in the business of developing, and (c) Receiver has not developed and was not involved with any development of the Property or the construction of any improvements thereon.  Receiver's duties as to the Property shall be pursuant to the Order, until such time that the receivership is terminated by the Court.  Broker acknowledges and agrees that Receiver is not personally liable or responsible for any damages that Broker may suffer as the result of this transaction.  Broker further acknowledges and agrees that Receiver's liability for any such damages, if any, is limited to the assets of the Receivership Estate, that the receivership could be terminated at any time, and that Broker can not recover any damages from Receiver upon termination of the receivership.  Broker further acknowledges that because the Property is in receivership and in the custody of Receiver, Receiver acts at the direction of the Court and only the Court which confirmed the receivership and issued the order for the Receivership Estate shall have any jurisdiction over any dispute relating to the Property.  If for any reason prior to the close of escrow, such receivership is discharged and terminated by the Court, Broker acknowledges and agrees that notwithstanding any provisions in this Agreement to the contrary, this Agreement will terminate upon notice thereof from Receiver to Broker and Receiver shall have no obligation to pay Broker any money or compensation unless Receiver is otherwise instructed by the Court.

10.     **Court Approval of Sale**.  This Agreement is subject to the Order and may be subject to final Court approval of the terms and conditions herein.  If approval of this Agreement is required by the Court, this Agreement shall have no force or effect until such approval is granted by the Court.

11.     **Notice and Payments**.  Any and all notices provided for herein shall be in writing and shall be delivered personally (including via courier) or deposited in the U.S. mail, certified with return receipt requested, postage prepaid and addressed as follows:

To Receiver:     Receivership Estate Over Specific
Assets of DDR MDT MV Anaheim
Hills L.P., et al
12707 High Bluff Drive, Suite 300
San Diego, CA 92130

To Broker:     *Rich Walter – Faris Lee Investments*
*2301 Dupont Dr. #100*
*Irvine, CA 92612*

12.    **Assignment**.  Broker shall not assign its interest in this Agreement, or any portion thereof, without the written consent of Receiver.  Receiver may assign this Agreement without the consent of Broker.

13.    **Entire Agreement; Modification**.    This written Agreement constitutes the complete agreement between the parties and supersedes any prior oral or written agreements between the parties regarding the Property.  There are no verbal agreements that change this Agreement and no waiver of any of its terms will be effective unless in a written agreement executed by the parties.

14.    **Controlling Law**.  This Agreement shall be interpreted under the laws of the jurisdiction of the Court that appointed Receiver for the Receivership Estate and shall be binding on the parties hereto, its successors, assigns, heirs and personal representatives.  The parties agree that they shall be subject to the personal jurisdiction of the Court that appointed Receiver for the Receivership Estate and the proper venue shall be in the Court that appointed Receiver for the Receivership Estate.

15.    **Severability**.  In the event any term, covenant, condition, provision or agreement herein contained is held to be invalid, void or otherwise unenforceable by any court of competent jurisdiction, the fact that such term, covenant, condition, provision or agreement is invalid, void or otherwise unenforceable shall in no way affect the validity or enforceability of any other term, covenant, condition, provision or agreement herein contained.

16.    **Limitation on Receiver's Liability**.  The obligations of Receiver under this Agreement are not personal obligations of the Receiver and Broker shall not look to the personal assets of, nor seek personal recourse against, the Receiver.

17.    **Indemnification**.  To the fullest extent permitted by law, Broker agrees to indemnify, protect, defend and hold Receiver, its employees and agents entirely harmless from all liability on account of any and all claims under worker's compensation acts and other employee benefit acts with respect to Broker's employees.  Broker shall also indemnify, protect, defend and hold Receiver, its employees and agents entirely harmless from and against any and all liens, claims for loss, expense, damages because of personal injury or death or damages to property, or other costs or charges, directly or indirectly arising out of, in whole or in part, Broker's negligent acts, errors and/or omissions in the performance of his obligations as stated in this Agreement, or the negligent acts, errors and/or omissions of Broker's employees or independent contractors in the performance of their obligations as stated in this Agreement.  Broker will defend with counsel reasonably approved by Receiver any and all claims or suits which may be brought or threatened against Receiver or its employees or independent contractors in connection therewith and will pay on behalf of Receiver any expenses which Receiver incurs by reason of such claims (including, but not limited to, court costs or actions).  The coverage of such indemnification shall include, without limitation, attorneys' fees and court, arbitration and/or mediation costs incurred by Receiver with regard thereto.  Said indemnity shall survive the expiration or termination of this Agreement until such time as action against Receiver on account of any matter covered by this indemnity is barred by the applicable statute of limitations.  Such payments on behalf of Receiver shall be in addition to any and all other legal remedies available to Receiver and shall not be considered Receiver's exclusive remedy.

18.    **Representations by Broker**.  Broker represents that it is duly licensed and qualified to act as a real estate broker in the State of where the Property is located.  Broker represents and warrants to Receiver that Broker will market the Property and otherwise perform Broker's services under this Agreement in accordance with all applicable federal, state and local laws and regulations (including, without limitation, nondiscrimination laws and regulations).  Without limiting the foregoing, the parties acknowledge that it is illegal for either Receiver or Broker to refuse to display or sell the Property to any person because of race, color, religion, national origin, sex, marital status or physical disability.  Broker acknowledges and agrees that the Receiver desires to have the Property (and improvements thereon, if any) marketed and sold on an absolutely "As-Is; With-All-Faults" basis.

19.    **Cost of Enforcement**.  In the event of any action or proceeding between Receiver and Broker to enforce any of the provisions and/or rights under this Agreement or on account of a breach of any term or provision hereof (including without limitation arbitration, mediation and court actions at law or in equity), the unsuccessful party to such action or proceeding agrees to pay to the prevailing party all costs and expenses, including reasonable attorneys' fees, incurred therein by such prevailing party, including any such costs and expenses incurred in any appeal, and if such prevailing party shall recover an award or

judgment in any such action or proceeding, such costs, expenses and fees shall be included in and as a part of such award or judgment.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the Effective Date.

"RECEIVER":

Receivership Estate Over Specific Assets of DDR
MDT MV Anaheim Hills L.P., et al
12707 High Bluff Drive, Suite 300
San Diego, CA 92130


By: _____
William J. Hoffman, solely in his capacity as Court
Appointed Receiver Over Specific Assets of MDT
MV Anaheim Hills L.P., et al
As appointed by the United States District Court
Northern District of California in Wells Fargo Bank,
N.A. as Trustee, etc., v. DDR MDT MV Anaheim
Hills LP, etc., et al.
(Case No. CV 10-3493 EMC)

"BROKER":

Faris Lee Investments, Inc
a Corporation Corporation

By: _____
Print Name: Rich Walter
Title: President

Exhibit A
Property

An approximately 76,360 SF building located at 200 E Imperial Hwy, Fullerton, CA 92835 and commonly known as Mervyns at North Fullerton.

Exhibit B
Commission Schedule

The following commission structure shall be applicable to both individual property sales and grouped property sales and payable only to the listing broker.

- 1.75% of the gross sales price of any sale up to $4,999,999.
- 1.50% of the gross sales price of any sale up to $9,999,999.
- 1.25% of the gross sales price of any sale of $10,000,000 or greater.

The following commission structure shall be available for both individual property sales and grouped property sales and payable only to the buyer's representing broker who shall in no case be affiliated with the listing broker.

- 1.00% cf gross sales price

Exhibit C
Excluded Buyers

None