1   JEFFER MANGELS BUTLER & MITCHELL LLP
    ROBERT B. KAPLAN (Bar No. 76950)
2   Two Embarcadero Center, Fifth Floor
    San Francisco, California  94111-3813
3   Telephone:     (415) 398-8080
    Facsimile:     (415) 398-5584
4
    Attorneys for Plaintiff WELLS FARGO BANK, N.A., as Trustee
5   for (i) the Registered Holders of GE Commercial Mortgage
    Corporation Commercial Mortgage Pass-Through Certificates,
6   Series 2005-C4; (ii) the Registered Holders of GMAC Commercial
    Mortgage Securities, Inc., Mortgage Pass-Through Certificates,
7   Series 2006-C1; and (iii) the Holders of COMM 2005-FL11
    Commercial Mortgage Pass-Through Certificates, acting by and
8   through Midland Loan Services, Inc., its Special Servicer

9                      UNITED STATES DISTRICT COURT

10                    NORTHERN DISTRICT OF CALIFORNIA

11   WELLS FARGO BANK, N.A., as Trustee, etc.,   CASE NO.     CV 10-3493 EMC

12               Plaintiffs,                      **SECOND ORDER AUTHORIZING
                                                  RECEIVER TO ENTER INTO
13          v.                                    COMMISSION AND LISTING
                                                  AGREEMENTS FOR SALE OF REAL
14   DDR MDT MV ANAHEIM HILLS LP, etc., et        PROPERTY**
     al.,
15
                 Defendants.
16

17

18

19          The Court, having reviewed the Second Stipulation Authorizing Receiver to Enter

20   into Commission Listing Agreements for Sale of Property ("Stipulation"), filed by Plaintiffs Wells

21   Fargo Bank, N.A., as Trustee for (i) the Registered Holders of GE Commercial Mortgage

22   Corporation Commercial Mortgage Pass-Through Certificates, Series 2005-C4; (ii) the Registered

23   Holders of GMAC Commercial Mortgage Securities, Inc., Mortgage Pass-Through Certificates,

24   Series 2006-C1; and (iii) the Holders of COMM 2005-FL11 Commercial Mortgage Pass-Through

25   Certificates, acting by and through Midland Loan Services, Inc., its Special Servicer and Defendants

26   DDR MDT MV Anaheim Hills LP, DDR MDT MV Antioch LP, DDR MDT MV Chandler LLC,

27   DDR MDT MV Chino LP, DDR MDT MV Clovis LP, DDR MDT MV Deer Valley LLC, DDR

28   MDT MV Folsom LP, DDR MDT MV Foothill Ranch LP, DDR MDT MV Garden Grove LP,

1   DDR MDT MV Ingram LP, DDR MDT MV Lompoc LP, DDR MDT MV Madera LP, DDR MDT

2   MV North Fullerton I LP, DDR MDT MV Palmdale LP, DDR MDT MV Redding LP, DDR MDT

3   MV Reno LLC, DDR MDT MV Santa Maria LP, DDR MDT MV Santa Rosa LP, DDR MDT MV

4   Silver Creek LLC, DDR MDT MV Slatten Ranch LP, DDR MDT MV Sonora LP, DDR MDT MV

5   Superstition Springs LLC, DDR MDT MV Tucson LLC, DDR MDT MV Tulare LP, DDR MDT

6   MV West Las Vegas LLC, and DDR MDT MV Burbank, LP, and good cause appearing therefor:

7           IT IS HEREBY ORDERED that the Receiver is hereby authorized to enter into the

8   Listing Agreements attached hereto collectively as Exhibit 1.[1]

9

10  DATED:    3/9/11



UNITED STATES _____

IT IS SO ORDERED

Judge Edward M. Chen

11

12

13

14

15

16

17

18

19

20

21

22

23     [1] All terms capitalized herein but not defined shall have the meanings ascribed to them in hat
24  certain Second Stipulation Authorizing Receiver to Enter into Commission and Listing Agreements
    for Sale of Property previously filed in the above-entitled action.

25

26

27

28

JMBM | Jeffer Mangels
       Butler & Mitchell LLP

**EXHIBIT 1**

## COMMISSION AND LISTING AGREEMENT FOR SALE OF PROPERTY

THIS COMMISSION AND LISTING AGREEMENT FOR SALE OF PROPERTY ("**Agreement**") is made and entered into by and between Receivership Over Specific Assets of DDR MDT MV Anaheim Hills L.P., et al ("**Receiver**"), and <u>Jones Lang LaSalle Americas, Inc.,</u> ("**Broker**") and is effective as of <u>February 23, 2011</u> (the "**Effective Date**").

### RECITALS

A.      Receiver is in possession of certain real property fully described in the attached as Exhibit "A" (the "**Property**").

B.      Receiver is duly appointed and acting pursuant to the order (the "**Order**") of United States District Court Northern District of California (the "**Court**") entered on August 24, 2010, in the matter of Wells Fargo bank, N.A., as Trustee v. DDR MDT MC Anaheim Hills LP, etc., et al., filed in such Court under Case No. CV 10-3493 EMC for certain assets in such matter (the "**Receivership Estate**").

C.      The parties hereto desire to enter into an agreement whereby Receiver appoints Broker as Receiver's exclusive listing broker to sell the Property, subject to and in accordance with the terms, covenants, conditions and agreements herein contained.

NOW THEREFORE, in consideration of the foregoing, and in consideration of the mutual terms, covenants, conditions and agreements herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      **Employment of Broker**.  Receiver hereby retains Broker as its exclusive broker upon the conditions and for the compensation hereinafter set forth, to market and sell the Property upon terms and conditions that may be acceptable to Receiver in Receiver's absolute discretion (hereinafter sometimes referred to as the "**Contemplated Transactions**").  Receiver acknowledges that Broker is active in the marketplace and that in some instances Broker may represent prospective purchasers.  Receiver desires that the Property be presented to such persons or entities and, without relieving Broker of any fiduciary obligations, Receiver consents to the dual representation created thereby.  Broker shall not disclose the confidential information of one principal to the other.

2.      **Term of Agency**.  The term of this Agreement shall be for a period of time commencing on the Effective Date and expiring six (6) months and shall continue on a Month to Month basis until terminated in accordance with the provisions of Paragraph 3 hereof.

3.      <u>**Termination**</u>.  Notwithstanding any other provision of this Agreement, the agreements herein contained shall be terminated and the rights and obligations of the parties hereto shall thereupon cease, and an accounting shall be made by Broker to the Estate, upon any of the following circumstances or events:

(a)      Consummation of a bona fide sale of the Property or foreclosure.

(b)      Substantial Destruction of the Property.  For purposes of this Agreement, the term "Substantial Destruction" shall be defined as destruction involving forty percent (40%) or more of the value of the improvements.

(c)      Taking under eminent domain or other like proceedings.  This Agreement shall terminate with respect to the portion so taken, but shall remain in full force and effect with respect to the balance of the Property; provided, however, that if the taking is of a substantial portion of the Property (twenty percent (20%) or more of the value thereof), this Agreement shall terminate as to all of the Property on the date when said taking occurs.

(d)      Broker is adjudged bankrupt or Broker makes an assignment for the benefit of its creditors or seeks relief from its creditors under any insolvency act.

(e)      Mutual agreement of the Receivership Estate and Broker expressed in writing.

TRIGILD
COMMISSION AND LISTING AGREEMENT FOR SALE OF PROPERTY-Mervyns
38584-00001/101210155.1

(f)     Thirty (30) days after written notice to terminate this Agreement is given by either party to the other party, which written notice may be given at any time without cause.

(g)     In the event that the Broker shall fail to keep, observe or perform any covenant, term or provision of this Agreement then the Receiver shall have the option to terminate this Agreement, effectively immediately, upon written notice to the Broker.

(h)     Upon the release of the Receiver or termination of the Receivership Estate.

4.     Notwithstanding the foregoing, Receiver may terminate this Agreement, with or without cause, upon thirty (30) days prior written notice to Broker.

5.     **Acceptance by Broker and Duties of Broker.**  Broker hereby accepts such agency and agrees to perform all services appropriate and necessary for the Contemplated Transactions, and Broker shall:

(a)     Use its best efforts to procure purchasers and assist Receiver and its agents (to the extent requested by Receiver) in the negotiation of all Contemplated Transactions.  Receiver shall have the right, in its absolute discretion, to accept or reject any proposed purchaser and terms of sale.

(b)     Maintain an adequate sales staff sufficient to carry out the Contemplated Transactions.

(c)     Advertise and promote the sale of the Property, at Broker's cost, by newspaper advertising, signs (subject to applicable regulations), email blasts, circulars and mailings, including the preparation of a marketing brochure, and by engaging in other appropriate and customary forms of advertising, all of which shall be approved in advance by Receiver for form and content.

(d)     Fully cooperate with other brokers in the marketplace in procuring a buyer and consummating the Contemplated Transactions.

(e)     In the event the Property includes any residential homes, Broker shall be responsible for complying with all disclosures to purchasers that are required (if any), by law or regulation, using industry-standard brokerage forms.

(f)     Perform such other duties as are customarily performed by listing agents selling similar properties.

6.     **Insurance.**  Broker shall maintain commercial general liability insurance containing a per occurrence and in the aggregate limit of at least $2,000,000 protecting against bodily injury, property damage (Broad Form) and personal injury claims arising from the exposures of (a) Premises-operations, (b) independent contractors, and (c) contractual liability risk covering the indemnity obligations set forth in this Agreement.  Receiver shall be named as an additional insured.  Broker shall maintain automobile liability coverage insuring against bodily injury and/or property damage arising out of the operation, maintenance or use of any auto.  Broker shall maintain worker's compensation insurance covering servants and employees engaged in the performance of this Agreement at all times during the term of this Agreement.  Evidence of said insurance satisfactory to Receiver must be provided to Receiver no later than ten days after the Effective Date.  Such insurance shall provide for waiver of subrogation and contain an endorsement specifying that the insurance provided by Broker shall be considered primary, and any other insurance available to Receiver or the Property shall be considered excess as may be applicable to claims arising out of this Agreement.  Broker shall give Receiver immediate notice of any cancellation, nonrenewal or adverse change in the insurance policy required herein.

7.     **Compensation of Broker.**  Receiver shall pay Broker compensation for its services in connection with Contemplated Transactions as follows:

(a)     See Exhibit "B" for compensation details.  The purchase price shall be accepted or rejected in Receiver's absolute discretion.  No commission shall be earned or payable unless and until the close of escrow occurs, as evidenced by the recordation of a deed and the purchase price has been

disbursed pursuant to Receiver's instructions. Receiver may, from time to time, supply Broker with a specific purchase price for use in marketing the Property.

(b)     In all co-brokerage situations where a broker other than Broker procures a purchaser and Receiver accepts the Contemplated Transaction, Receiver may, at its option, (a) pay a one-half commission (or other amount as directed by a separate agreement) directly to such co-operating broker and a one-half commission (or other amount as directed by a separate agreement) to Broker, or (b) pay, and only be responsible for, a full commission to Broker, in which case Broker shall share equally its commissions with co-brokers and shall protect, indemnify, defend and hold harmless Receiver with respect to any claim from or by any broker claiming a commission as a result of dealings with Broker in excess of the amounts payable to Broker under this Agreement.

(c)     In any situation where the property is foreclosed on by the Plaintiff or if a settlement agreement is reached between the Plaintiff and the Defendant and the Property is returned to the Defendant Broker shall not be compensated.

8.     **Post-Termination/Expiration Commission Rights**.  Subject to the terms and conditions of this Agreement, Broker shall be paid a commission if the Property is sold within 60 days after expiration or termination of this Agreement, provided that Broker has properly registered such purchaser with Receiver. As used in the preceding sentence, "registered" shall mean that Broker (or a cooperating broker working with Broker) procured such purchaser, and such purchaser submitted a written proposal or offer to purchase the Property, prior to such expiration or termination of this Agreement.

9.     **Acknowledgment**.  Broker acknowledges and agrees that (a) Receiver has been appointed by Court to facilitate the sale of the Property, (b) Receiver is not in the business of developing, and (c) Receiver has not developed and was not involved with any development of the Property or the construction of any improvements thereon.  Receiver's duties as to the Property shall be pursuant to the Order, until such time that the receivership is terminated by the Court.  Broker acknowledges and agrees that Receiver is not personally liable or responsible for any damages that Broker may suffer as the result of this transaction. Broker further acknowledges and agrees that Receiver's liability for any such damages, if any, is limited to the assets of the Receivership Estate, that the receivership could be terminated at any time, and that Broker can not recover any damages from Receiver upon termination of the receivership.  Broker further acknowledges that because the Property is in receivership and in the custody of Receiver, Receiver acts at the direction of the Court and only the Court which confirmed the receivership and issued the order for the Receivership Estate shall have any jurisdiction over any dispute relating to the Property.  If for any reason prior to the close of escrow, such receivership is discharged and terminated by the Court, Broker acknowledges and agrees that notwithstanding any provisions in this Agreement to the contrary, this Agreement will terminate upon notice thereof from Receiver to Broker and Receiver shall have no obligation to pay Broker any money or compensation unless Receiver is otherwise instructed by the Court.

10.     **Court Approval of Sale**.  This Agreement is subject to the Order and may be subject to final Court approval of the terms and conditions herein.  If approval of this Agreement is required by the Court, this Agreement shall have no force or effect until such approval is granted by the Court.

11.     **Notice and Payments**. Any and all notices provided for herein shall be in writing and shall be delivered personally (including via courier) or deposited in the U.S. mail, certified with return receipt requested, postage prepaid and addressed as follows:

To Receiver:     Receivership Estate Over Specific
Assets of DDR MDT MV Anaheim
Hills L.P., et al
12707 High Bluff Drive, Suite 300
San Diego, CA 92130

To Broker:    Jones Lang LaSalle
              Attn; John Taylor
              14100 San Pedro, Suite 608
              San Antonio, Texas 78232
              Phone 210-386-0080
              Fax 312-288-4297
              Email john.taylor@am.jll.com

12.     **Assignment**.  Broker shall not assign its interest in this Agreement, or any portion thereof, without the written consent of Receiver.  Receiver may assign this Agreement without the consent of Broker.

13.     **Entire Agreement; Modification**.  This written Agreement constitutes the complete agreement between the parties and supersedes any prior oral or written agreements between the parties regarding the Property.  There are no verbal agreements that change this Agreement and no waiver of any of its terms will be effective unless in a written agreement executed by the parties.

14.     **Controlling Law**.  This Agreement shall be interpreted under the laws of the jurisdiction of the Court that appointed Receiver for the Receivership Estate and shall be binding on the parties hereto, its successors, assigns, heirs and personal representatives.  The parties agree that they shall be subject to the personal jurisdiction of the Court that appointed Receiver for the Receivership Estate and the proper venue shall be in the Court that appointed Receiver for the Receivership Estate.

15.     **Severability**.  In the event any term, covenant, condition, provision or agreement herein contained is held to be invalid, void or otherwise unenforceable by any court of competent jurisdiction, the fact that such term, covenant, condition, provision or agreement is invalid, void or otherwise unenforceable shall in no way affect the validity or enforceability of any other term, covenant, condition, provision or agreement herein contained.

16.     **Limitation on Receiver's Liability**.  The obligations of Receiver under this Agreement are not personal obligations of the Receiver and Broker shall not look to the personal assets of, nor seek personal recourse against, the Receiver.

17.     **Indemnification**.  To the fullest extent permitted by law, Broker agrees to indemnify, protect, defend and hold Receiver, its employees and agents entirely harmless from all liability on account of any and all claims under worker's compensation acts and other employee benefit acts with respect to Broker's employees.  Broker shall also indemnify, protect, defend and hold Receiver, its employees and agents entirely harmless from and against any and all liens, claims for loss, expense, damages because of personal injury or death or damages to property, or other costs or charges, directly or indirectly arising out of, in whole or in part, Broker's negligent acts, errors and/or omissions in the performance of his obligations as stated in this Agreement, or the negligent acts, errors and/or omissions of Broker's employees or independent contractors in the performance of their obligations as stated in this Agreement.  Broker will defend with counsel reasonably approved by Receiver any and all claims or suits which may be brought or threatened against Receiver or its employees or independent contractors in connection therewith and will pay on behalf of Receiver any expenses which Receiver incurs by reason of such claims (including, but not limited to, court costs or actions).  The coverage of such indemnification shall include, without limitation, attorneys' fees and court, arbitration and/or mediation costs incurred by Receiver with regard thereto.  Said indemnity shall survive the expiration or termination of this Agreement until such time as action against Receiver on account of any matter covered by this indemnity is barred by the applicable statute of limitations.  Such payments on behalf of Receiver shall be in addition  to any and all other legal remedies available to Receiver and shall not be considered Receiver's exclusive remedy.

18.     **Representations by Broker**.  Broker represents that it is duly licensed and qualified to act as a real estate broker in the State of where the Property is located.  Broker represents and warrants to Receiver that Broker will market the Property and otherwise perform Broker's services under this Agreement in accordance with all applicable federal, state and local laws and regulations (including, without limitation, nondiscrimination laws and regulations).  Without limiting the foregoing, the parties acknowledge that it is illegal for either Receiver or Broker to refuse to display or sell the Property to any person because of race, color, religion, national origin, sex, marital status or physical disability. Broker acknowledges and agrees that

the Receiver desires to have the Property (and improvements thereon, if any) marketed and sold on an absolutely "As-Is; With-All-Faults" basis.

19. **Cost of Enforcement**. In the event of any action or proceeding between Receiver and Broker to enforce any of the provisions and/or rights under this Agreement or on account of a breach of any term or provision hereof (including without limitation arbitration, mediation and court actions at law or in equity), the unsuccessful party to such action or proceeding agrees to pay to the prevailing party all costs and expenses, including reasonable attorneys' fees, incurred therein by such prevailing party, including any such costs and expenses incurred in any appeal, and if such prevailing party shall recover an award or judgment in any such action or proceeding, such costs, expenses and fees shall be included in and as a part of such award or judgment.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the Effective Date.

"RECEIVER":                                               "BROKER":

Receivership Estate Over Specific Assets of DDR          Jones Lang LaSalle, Inc
MDT MV Anaheim Hills L.P., et al                          _____
12707 High Bluff Drive, Suite 300
San Diego, CA 92130                                       By: _____
                                                         Print Name: John O. Taylor
                                                         Title: Senior Vice President

By: _____
William J. Hoffman, solely in his capacity as Court
Appointed Receiver Over Specific Assets of MDT
MV Anaheim Hills L.P., et al
As appointed by the United States District Court
Northern District of California in Wells Fargo Bank,
N.A. as Trustee, etc., v. DDR MDT MV Anaheim
Hills LP, etc., et al.
(Case No. CV 10-3493 EMC)

Exhibit A
Property

An approximately 76,597 SF building located at 157 NW Loop 410 San Antonio, TX and commonly known as Mervyns at Ingram Park.

# *Exhibit B*

<u>COMPENSATION</u>

As compensation for the services to be performed by Broker under this agreement, Broker shall be entitled to be paid a transaction fee (the "Transaction Fee") equal to an amount determined in accordance with the following schedule:

**Direct Sale (with no co-broker)** – 3% of Gross Proceeds.
**Sale with co-broker** – 4% of Gross Proceeds. *To be split per Paragraph 7.b of this agreement.*

For purposes of calculating the Transaction Fee payable to Broker under this agreement, the term "Gross Proceeds" shall mean the total fair market value of the gross consideration (including without limitation, cash, notes, securities, property, obligations or mortgages assumed or taken subject to, and any other form of consideration) to be received by Receiver and/or its investors in connection with the Transaction. Gross Proceeds shall include any portion of the purchase price placed in escrow or subject to a holdback as part of the Transaction but shall not be adjusted by any fees, prorations or closing expenses. The Transaction Fee will become due and payable by Receiver upon transfer and recordation of title for a Transaction, whether or not through the efforts of Broker, provided Receiver has entered into a letter of intent or definitive agreement for the Transaction during the term of this agreement and such Transaction is not an Excluded Transaction (as defined below).


<u>EXPENSES</u>

**Only in the event that a close of escrow does <u>not</u> occur on the Property**, Receiver shall reimburse Broker for all reasonable direct out-of-pocket costs and expenses ("Marketing Expenses") incurred by Broker within the scope of its engagement pursuant to this agreement, including without limitation; property signage, printing and production charges for Offering Memorandum, internet property listing services, aerial/property photography, mail and courier services, provided that the aggregate amount of such out-of-pocket costs and expenses shall not exceed the sum of $4,000.00 during the term of this agreement. Broker will provide documentation of the Marketing Expenses with final invoice.  Payments due under this Section shall be due 30 days after the termination of this agreement or 20 days after receipt of Invoice, which ever is later.

## COMMISSION AND LISTING AGREEMENT FOR SALE OF PROPERTY

THIS COMMISSION AND LISTING AGREEMENT FOR SALE OF PROPERTY ("Agreement") is made and entered into by and between Receivership Over Specific Assets of DDR MDT MV Anaheim Hills L.P., et al ("Receiver"), and Cornish & Carey Commercial Newmark Knight Frank, ("Broker") and is effective as of _____, 2011 (the "Effective Date").

### RECITALS

A.      Receiver is in possession of certain real property fully described in the attached as Exhibit "A" (the "Property").

B.      Receiver is duly appointed and acting pursuant to the order (the "Order") of United States District Court Northern District of California (the "Court") entered on August 24, 2010, in the matter of Wells Fargo bank, N.A., as Trustee v. DDR MDT MC Anaheim Hills LP, etc., et al., filed in such Court under Case No. CV 10-3493 EMC for certain assets in such matter (the "Receivership Estate").

C.      The parties hereto desire to enter into an agreement whereby Receiver appoints Broker as Receiver's exclusive listing broker to sell the Property, subject to and in accordance with the terms, covenants, conditions and agreements herein contained.

NOW THEREFORE, in consideration of the foregoing, and in consideration of the mutual terms, covenants, conditions and agreements herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      **Employment of Broker.**  Receiver hereby retains Broker as its exclusive broker upon the conditions and for the compensation hereinafter set forth, to market and sell the Property upon terms and conditions that may be acceptable to Receiver in Receiver's absolute discretion (hereinafter sometimes referred to as the "Contemplated Transactions").  Receiver acknowledges that Broker is active in the marketplace and that in some instances Broker may represent prospective purchasers.  Receiver desires that the Property be presented to such persons or entities and, without relieving Broker of any fiduciary obligations, Receiver consents to the dual representation created thereby.  Broker shall not disclose the confidential information of one principal to the other.

2.      **Term of Agency.**  The term of this Agreement shall be for a period of time commencing on the Effective Date and expiring six (6) months and shall continue on a Month to Month basis until terminated in accordance with the provisions of Paragraph 3 hereof.

3.      **Termination.**  Notwithstanding any other provision of this Agreement, the agreements herein contained shall be terminated and the rights and obligations of the parties hereto shall thereupon cease, and an accounting shall be made by Broker to the Estate, upon any of the following circumstances or events:

(a)      Consummation of a bona fide sale of the Property or foreclosure.

(b)      Substantial Destruction of the Property.  For purposes of this Agreement, the term "Substantial Destruction" shall be defined as destruction involving forty percent (40%) or more of the value of the improvements.

(c)      Taking under eminent domain or other like proceedings.  This Agreement shall terminate with respect to the portion so taken, but shall remain in full force and effect with respect to the balance of the Property; provided, however, that if the taking is of a substantial portion of the Property (twenty percent (20%) or more of the value thereof), this Agreement shall terminate as to all of the Property on the date when said taking occurs.

(d)      Broker is adjudged bankrupt or Broker makes an assignment for the benefit of its creditors or seeks relief from its creditors under any insolvency act.

(e)      Mutual agreement of the Receivership Estate and Broker expressed in writing.

(f)     Thirty (30) days after written notice to terminate this Agreement is given by either party to the other party, which written notice may be given at any time without cause.

(g)     In the event that the Broker shall fail to keep, observe or perform any covenant, term or provision of this Agreement then the Receiver shall have the option to terminate this Agreement, effectively immediately, upon written notice to the Broker.

(h)     Upon the release of the Receiver or termination of the Receivership Estate.

4.     Notwithstanding the foregoing, Receiver may terminate this Agreement, with or without cause, upon thirty (30) days prior written notice to Broker.

5.     **Acceptance by Broker and Duties of Broker.**  Broker hereby accepts such agency and agrees to perform all services appropriate and necessary for the Contemplated Transactions, and Broker shall:

(a)     Use its best efforts to procure purchasers and assist Receiver and its agents (to the extent requested by Receiver) in the negotiation of all Contemplated Transactions. Receiver shall have the right, in its absolute discretion, to accept or reject any proposed purchaser and terms of sale.

(b)     Maintain an adequate sales staff sufficient to carry out the Contemplated Transactions.

(c)     Advertise and promote the sale of the Property, at Broker's cost, by newspaper advertising, signs (subject to applicable regulations), email blasts, circulars and mailings, including the preparation of a marketing brochure, and by engaging in other appropriate and customary forms of advertising, all of which shall be approved in advance by Receiver for form and content.

(d)     Fully cooperate with other brokers in the marketplace in procuring a buyer and consummating the Contemplated Transactions.

(e)     In the event the Property includes any residential homes, Broker shall be responsible for complying with all disclosures to purchasers that are required (if any), by law or regulation, using industry-standard brokerage forms.

(f)     Perform such other duties as are customarily performed by listing agents selling similar properties.

6.     **Insurance.**  Broker shall maintain commercial general liability insurance containing a per occurrence and in the aggregate limit of at least $2,000,000 protecting against bodily injury, property damage (Broad Form) and personal injury claims arising from the exposures of (a) Premises-operations, (b) independent contractors, and (c) contractual liability risk covering the indemnity obligations set forth in this Agreement. Receiver shall be named as an additional insured. Broker shall maintain automobile liability coverage insuring against bodily injury and/or property damage arising out of the operation, maintenance or use of any auto. Broker shall maintain worker's compensation insurance covering servants and employees engaged in the performance of this Agreement at all times during the term of this Agreement. Evidence of said insurance satisfactory to Receiver must be provided to Receiver no later than ten days after the Effective Date. Such insurance shall provide for waiver of subrogation and contain an endorsement specifying that the insurance provided by Broker shall be considered primary, and any other insurance available to Receiver or the Property shall be considered excess as may be applicable to claims arising out of this Agreement. Broker shall give Receiver immediate notice of any cancellation, nonrenewal or adverse change in the insurance policy required herein.

7.     **Compensation of Broker.**  Receiver shall pay Broker compensation for its services in connection with Contemplated Transactions as follows:

(a)     See Exhibit "B" for compensation details. The purchase price shall be accepted or rejected in Receiver's absolute discretion. No commission shall be earned or payable unless and until the close of escrow occurs, as evidenced by the recordation of a deed and the purchase price has been

disbursed pursuant to Receiver's instructions. Receiver may, from time to time, supply Broker with a specific purchase price for use in marketing the Property.

(b)   In all co-brokerage situations where a broker other than Broker procures a purchaser and Receiver accepts the Contemplated Transaction, Receiver may, at its option, (a) pay a one-half commission (or other amount as directed by a separate agreement) directly to such co-operating broker and a one-half commission (or other amount as directed by a separate agreement) to Broker, or (b) pay, and only be responsible for, a full commission to Broker, in which case Broker shall share equally its commissions with co-brokers and shall protect, indemnify, defend and hold harmless Receiver with respect to any claim from or by any broker claiming a commission as a result of dealings with Broker in excess of the amounts payable to Broker under this Agreement.

(c)   In any situation where the property is foreclosed on by the Plaintiff or if a settlement agreement is reached between the Plaintiff and the Defendant and the Property is returned to the Defendant Broker shall not be compensated.

8.   **Post-Termination/Expiration Commission Rights.** Subject to the terms and conditions of this Agreement, Broker shall be paid a commission if the Property is sold within 60 days after expiration or termination of this Agreement, provided that Broker has properly registered such purchaser with Receiver. As used in the preceding sentence, "registered" shall mean that Broker (or a cooperating broker working with Broker) procured such purchaser, and such purchaser submitted a written proposal or offer to purchase the Property, prior to such expiration or termination of this Agreement.

9.   **Acknowledgment.** Broker acknowledges and agrees that (a) Receiver has been appointed by Court to facilitate the sale of the Property, (b) Receiver is not in the business of developing, and (c) Receiver has not developed and was not involved with any development of the Property or the construction of any improvements thereon. Receiver's duties as to the Property shall be pursuant to the Order, until such time that the receivership is terminated by the Court. Broker acknowledges and agrees that Receiver is not personally liable or responsible for any damages that Broker may suffer as the result of this transaction. Broker further acknowledges and agrees that Receiver's liability for any such damages, if any, is limited to the assets of the Receivership Estate, that the receivership could be terminated at any time, and that Broker can not recover any damages from Receiver upon termination of the receivership. Broker further acknowledges that because the Property is in receivership and in the custody of Receiver, Receiver acts at the direction of the Court and only the Court which confirmed the receivership and issued the order for the Receivership Estate shall have any jurisdiction over any dispute relating to the Property. If for any reason prior to the close of escrow, such receivership is discharged and terminated by the Court, Broker acknowledges and agrees that notwithstanding any provisions in this Agreement to the contrary, this Agreement will terminate upon notice thereof from Receiver to Broker and Receiver shall have no obligation to pay Broker any money or compensation unless Receiver is otherwise instructed by the Court.

10.   **Court Approval of Sale.** This Agreement is subject to the Order and may be subject to final Court approval of the terms and conditions herein. If approval of this Agreement is required by the Court, this Agreement shall have no force or effect until such approval is granted by the Court.

11.   **Notice and Payments.** Any and all notices provided for herein shall be in writing and shall be delivered personally (including via courier) or deposited in the U.S. mail, certified with return receipt requested, postage prepaid and addressed as follows:

To Receiver:   Receivership Estate Over Specific
Assets of DDR MDT MV Anaheim
Hills L.P., et al
12707 High Bluff Drive, Suite 300
San Diego, CA 92130

To Broker:   Cornish & Carey Commercial
Newmark Knight Frank
1601 Response Road, Suite 160
Sacramento, CA 95815

12. **Assignment.** Broker shall not assign its interest in this Agreement, or any portion thereof, without the written consent of Receiver. Receiver may assign this Agreement without the consent of Broker.

13. **Entire Agreement; Modification.** This written Agreement constitutes the complete agreement between the parties and supersedes any prior oral or written agreements between the parties regarding the Property. There are no verbal agreements that change this Agreement and no waiver of any of its terms will be effective unless in a written agreement executed by the parties.

14. **Controlling Law.** This Agreement shall be interpreted under the laws of the jurisdiction of the Court that appointed Receiver for the Receivership Estate and shall be binding on the parties hereto, its successors, assigns, heirs and personal representatives. The parties agree that they shall be subject to the personal jurisdiction of the Court that appointed Receiver for the Receivership Estate and the proper venue shall be in the Court that appointed Receiver for the Receivership Estate.

15. **Severability.** In the event any term, covenant, condition, provision or agreement herein contained is held to be invalid, void or otherwise unenforceable by any court of competent jurisdiction, the fact that such term, covenant, condition, provision or agreement is invalid, void or otherwise unenforceable shall in no way affect the validity or enforceability of any other term, covenant, condition, provision or agreement herein contained.

16. **Limitation on Receiver's Liability.** The obligations of Receiver under this Agreement are not personal obligations of the Receiver and Broker shall not look to the personal assets of, nor seek personal recourse against, the Receiver.

17. **Indemnification.** To the fullest extent permitted by law, Broker agrees to indemnify, protect, defend and hold Receiver, its employees and agents entirely harmless from all liability on account of any and all claims under worker's compensation acts and other employee benefit acts with respect to Broker's employees. Broker shall also indemnify, protect, defend and hold Receiver, its employees and agents entirely harmless from and against any and all liens, claims for loss, expense, damages because of personal injury or death or damages to property, or other costs or charges, directly or indirectly arising out of, in whole or in part, Broker's negligent acts, errors and/or omissions in the performance of his obligations as stated in this Agreement, or the negligent acts, errors and/or omissions of Broker's employees or independent contractors in the performance of their obligations as stated in this Agreement. Broker will defend with counsel reasonably approved by Receiver any and all claims or suits which may be brought or threatened against Receiver or its employees or independent contractors in connection therewith and will pay on behalf of Receiver any expenses which Receiver incurs by reason of such claims (including, but not limited to, court costs or actions). The coverage of such indemnification shall include, without limitation, attorneys' fees and court, arbitration and/or mediation costs incurred by Receiver with regard thereto. Said indemnity shall survive the expiration or termination of this Agreement until such time as action against Receiver on account of any matter covered by this indemnity is barred by the applicable statute of limitations. Such payments on behalf of Receiver shall be in addition to any and all other legal remedies available to Receiver and shall not be considered Receiver's exclusive remedy.

18. **Representations by Broker.** Broker represents that it is duly licensed and qualified to act as a real estate broker in the State of where the Property is located. Broker represents and warrants to Receiver that Broker will market the Property and otherwise perform Broker's services under this Agreement in accordance with all applicable federal, state and local laws and regulations (including, without limitation, nondiscrimination laws and regulations). Without limiting the foregoing, the parties acknowledge that it is illegal for either Receiver or Broker to refuse to display or sell the Property to any person because of race, color, religion, national origin, sex, marital status or physical disability. Broker acknowledges and agrees that the Receiver desires to have the Property (and improvements thereon, if any) marketed and sold on an absolutely "As-Is; With-All-Faults" basis.

19. **Cost of Enforcement.** In the event of any action or proceeding between Receiver and Broker to enforce any of the provisions and/or rights under this Agreement or on account of a breach of any term or provision hereof (including without limitation arbitration, mediation and court actions at law or in equity), the unsuccessful party to such action or proceeding agrees to pay to the prevailing party all costs and expenses, including reasonable attorneys' fees, incurred therein by such prevailing party, including any such costs and expenses incurred in any appeal, and if such prevailing party shall recover an award or

judgment in any such action or proceeding, such costs, expenses and fees shall be included in and as a part of such award or judgment.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the Effective Date.

"RECEIVER":

Receivership Estate Over Specific Assets of DDR
MDT MV Anaheim Hills L.P., et al.
12707 High Bluff Drive, Suite 300
San Diego, CA 92130

By: _____
William J. Hoffman, solely in his capacity as Court
Appointed Receiver Over Specific Assets of MDT
MV Anaheim Hills L.P., et al.
As appointed by the United States District Court
Northern District of California in Wells Fargo Bank,
N.A. as Trustee, etc., v. DDR MDT MV Anaheim
Hills LP, etc., et al.
(Case No. CV 10-3493 EMC)

"BROKER":

Cornish & Carey Commercial Newmark Knight
Frank
1601 Response Road, Suite 160
Sacramento, CA 95815

By: _____
Print Name: Sean Fulp
Title: Managing Director

Exhibit A
Property

An approximately 75,088 SF building located at 1000 Shaw Avenue, Clovis, CA 93612 and commonly known as Mervyn's at Sierra Vista Mall.

Exhibit "B"
Commission

The following commission structure shall be applicable to both individual property sales and grouped Property sales and payable only to the listing broker.

- 1.75% of the gross sales price of any sale up to $4,999,999.
- 1.50% of the gross sales price of any sale up to $9,999,999.
- 1.25% of the gross sales price of any sale of $10,000,000 or greater.

In the event that Kohl's is the Buyer of the Clovis location, a ½ commission based on the structure above shall be paid to the listing broker.

## COMMISSION AND LISTING AGREEMENT FOR SALE OF PROPERTY

THIS COMMISSION AND LISTING AGREEMENT FOR SALE OF PROPERTY ("Agreement") is made and entered into by and between Receivership Over Specific Assets of DDR MDT MV Anaheim Hills L.P., et al ("Receiver"), and Cornish & Carey Commercial Newmark Knight Frank, ("Broker") and is effective as of _____, 2011 (the "Effective Date").

### RECITALS

A.       Receiver is in possession of certain real property fully described in the attached as Exhibit "A" (the "Property").

B.       Receiver is duly appointed and acting pursuant to the order (the "Order") of United States District Court Northern District of California (the "Court") entered on August 24, 2010, in the matter of Wells Fargo bank, N.A., as Trustee v. DDR MDT MC Anaheim Hills LP, etc., et al., filed in such Court under Case No. CV 10-3493 EMC for certain assets in such matter (the "Receivership Estate").

C.       The parties hereto desire to enter into an agreement whereby Receiver appoints Broker as Receiver's exclusive listing broker to sell the Property, subject to and in accordance with the terms, covenants, conditions and agreements herein contained.

NOW THEREFORE, in consideration of the foregoing, and in consideration of the mutual terms, covenants, conditions and agreements herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.       **Employment of Broker.**  Receiver hereby retains Broker as its exclusive broker upon the conditions and for the compensation hereinafter set forth, to market and sell the Property upon terms and conditions that may be acceptable to Receiver in Receiver's absolute discretion (hereinafter sometimes referred to as the "Contemplated Transactions").  Receiver acknowledges that Broker is active in the marketplace and that in some instances Broker may represent prospective purchasers.  Receiver desires that the Property be presented to such persons or entities and, without relieving Broker of any fiduciary obligations, Receiver consents to the dual representation created thereby.  Broker shall not disclose the confidential information of one principal to the other.

2.       **Term of Agency.**  The term of this Agreement shall be for a period of time commencing on the Effective Date and expiring six (6) months and shall continue on a Month to Month basis until terminated in accordance with the provisions of Paragraph 3 hereof.

3.       **Termination.**  Notwithstanding any other provision of this Agreement, the agreements herein contained shall be terminated and the rights and obligations of the parties hereto shall thereupon cease, and an accounting shall be made by Broker to the Estate, upon any of the following circumstances or events:

(a)       Consummation of a bona fide sale of the Property or foreclosure.

(b)       Substantial Destruction of the Property.  For purposes of this Agreement, the term "Substantial Destruction" shall be defined as destruction involving forty percent (40%) or more of the value of the improvements.

(c)       Taking under eminent domain or other like proceedings.  This Agreement shall terminate with respect to the portion so taken, but shall remain in full force and effect with respect to the balance of the Property; provided, however, that if the taking is of a substantial portion of the Property (twenty percent (20%) or more of the value thereof), this Agreement shall terminate as to all of the Property on the date when said taking occurs.

(d)       Broker is adjudged bankrupt or Broker makes an assignment for the benefit of its creditors or seeks relief from its creditors under any insolvency act.

(e)       Mutual agreement of the Receivership Estate and Broker expressed in writing.

(f)      Thirty (30) days after written notice to terminate this Agreement is given by either party to the other party, which written notice may be given at any time without cause.

(g)      In the event that the Broker shall fail to keep, observe or perform any covenant, term or provision of this Agreement then the Receiver shall have the option to terminate this Agreement, effectively immediately, upon written notice to the Broker.

(h)      Upon the release of the Receiver or termination of the Receivership Estate.

4.      Notwithstanding the foregoing, Receiver may terminate this Agreement, with or without cause, upon thirty (30) days prior written notice to Broker.

5.      **Acceptance by Broker and Duties of Broker.**  Broker hereby accepts such agency and agrees to perform all services appropriate and necessary for the Contemplated Transactions, and Broker shall:

(a)      Use its best efforts to procure purchasers and assist Receiver and its agents (to the extent requested by Receiver) in the negotiation of all Contemplated Transactions. Receiver shall have the right, in its absolute discretion, to accept or reject any proposed purchaser and terms of sale.

(b)      Maintain an adequate sales staff sufficient to carry out the Contemplated Transactions.

(c)      Advertise and promote the sale of the Property, at Broker's cost, by newspaper advertising, signs (subject to applicable regulations), email blasts, circulars and mailings, including the preparation of a marketing brochure, and by engaging in other appropriate and customary forms of advertising, all of which shall be approved in advance by Receiver for form and content.

(d)      Fully cooperate with other brokers in the marketplace in procuring a buyer and consummating the Contemplated Transactions.

(e)      In the event the Property includes any residential homes, Broker shall be responsible for complying with all disclosures to purchasers that are required (if any), by law or regulation, using industry-standard brokerage forms.

(f)      Perform such other duties as are customarily performed by listing agents selling similar properties.

6.      **Insurance.**  Broker shall maintain commercial general liability insurance containing a per occurrence and in the aggregate limit of at least $2,000,000 protecting against bodily injury, property damage (Broad Form) and personal injury claims arising from the exposures of (a) Premises-operations, (b) independent contractors, and (c) contractual liability risk covering the indemnity obligations set forth in this Agreement. Receiver shall be named as an additional insured. Broker shall maintain automobile liability coverage insuring against bodily injury and/or property damage arising out of the operation, maintenance or use of any auto. Broker shall maintain worker's compensation insurance covering servants and employees engaged in the performance of this Agreement at all times during the term of this Agreement. Evidence of said insurance satisfactory to Receiver must be provided to Receiver no later than ten days after the Effective Date. Such insurance shall provide for waiver of subrogation and contain an endorsement specifying that the insurance provided by Broker shall be considered primary, and any other insurance available to Receiver or the Property shall be considered excess as may be applicable to claims arising out of this Agreement. Broker shall give Receiver immediate notice of any cancellation, nonrenewal or adverse change in the insurance policy required herein.

7.      **Compensation of Broker.**  Receiver shall pay Broker compensation for its services in connection with Contemplated Transactions as follows:

(a)      See Exhibit "B" for compensation details. The purchase price shall be accepted or rejected in Receiver's absolute discretion. No commission shall be earned or payable unless and until the close of escrow occurs, as evidenced by the recordation of a deed and the purchase price has been

disbursed pursuant to Receiver's instructions. Receiver may, from time to time, supply Broker with a specific purchase price for use in marketing the Property.

(b)    In all co-brokerage situations where a broker other than Broker procures a purchaser and Receiver accepts the Contemplated Transaction, Receiver may, at its option, (a) pay a one-half commission (or other amount as directed by a separate agreement) directly to such co-operating broker and a one-half commission (or other amount as directed by a separate agreement) to Broker, or (b) pay, and only be responsible for, a full commission to Broker, in which case Broker shall share equally its commissions with co-brokers and shall protect, indemnify, defend and hold harmless Receiver with respect to any claim from or by any broker claiming a commission as a result of dealings with Broker in excess of the amounts payable to Broker under this Agreement.

(c)    In any situation where the property is foreclosed on by the Plaintiff or if a settlement agreement is reached between the Plaintiff and the Defendant and the Property is returned to the Defendant, Broker shall not be compensated.

8.    **Post-Termination/Expiration Commission Rights.** Subject to the terms and conditions of this Agreement, Broker shall be paid a commission if the Property is sold within 60 days after expiration or termination of this Agreement, provided that Broker has properly registered such purchaser with Receiver. As used in the preceding sentence, "registered" shall mean that Broker (or a cooperating broker working with Broker) procured such purchaser, and such purchaser submitted a written proposal or offer to purchase the Property, prior to such expiration or termination of this Agreement.

9.    **Acknowledgment.** Broker acknowledges and agrees that (a) Receiver has been appointed by Court to facilitate the sale of the Property, (b) Receiver is not in the business of developing, and (c) Receiver has not developed and was not involved with any development of the Property or the construction of any improvements thereon. Receiver's duties as to the Property shall be pursuant to the Order, until such time that the receivership is terminated by the Court. Broker acknowledges and agrees that Receiver is not personally liable or responsible for any damages that Broker may suffer as the result of this transaction. Broker further acknowledges and agrees that Receiver's liability for any such damages, if any, is limited to the assets of the Receivership Estate, that the receivership could be terminated at any time, and that Broker can not recover any damages from Receiver upon termination of the receivership. Broker further acknowledges that because the Property is in receivership and in the custody of Receiver, Receiver acts at the direction of the Court and only the Court which confirmed the receivership and issued the order for the Receivership Estate shall have any jurisdiction over any dispute relating to the Property. If for any reason prior to the close of escrow, such receivership is discharged and terminated by the Court, Broker acknowledges and agrees that notwithstanding any provisions in this Agreement to the contrary, this Agreement will terminate upon notice thereof from Receiver to Broker and Receiver shall have no obligation to pay Broker any money or compensation unless Receiver is otherwise instructed by the Court.

10.    **Court Approval of Sale.** This Agreement is subject to the Order and may be subject to final Court approval of the terms and conditions herein. If approval of this Agreement is required by the Court, this Agreement shall have no force or effect until such approval is granted by the Court.

11.    **Notice and Payments.** Any and all notices provided for herein shall be in writing and shall be delivered personally (including via courier) or deposited in the U.S. mail, certified with return receipt requested, postage prepaid and addressed as follows:

To Receiver:    Receivership Estate Over Specific
               Assets of DDR MDT MV Anaheim
               Hills L.P., et al
               12707 High Bluff Drive, Suite 300
               San Diego, CA 92130


To Broker:     Cornish & Carey Commercial
               Newmark Knight Frank
               1601 Response Road, Suite 160
               Sacramento, CA 95815

12.     **Assignment.** Broker shall not assign its interest in this Agreement, or any portion thereof, without the written consent of Receiver. Receiver may assign this Agreement without the consent of Broker.

13.     **Entire Agreement; Modification.** This written Agreement constitutes the complete agreement between the parties and supersedes any prior oral or written agreements between the parties regarding the Property. There are no verbal agreements that change this Agreement and no waiver of any of its terms will be effective unless in a written agreement executed by the parties.

14.     **Controlling Law.** This Agreement shall be interpreted under the laws of the jurisdiction of the Court that appointed Receiver for the Receivership Estate and shall be binding on the parties hereto, its successors, assigns, heirs and personal representatives. The parties agree that they shall be subject to the personal jurisdiction of the Court that appointed Receiver for the Receivership Estate and the proper venue shall be in the Court that appointed Receiver for the Receivership Estate.

15.     **Severability.** In the event any term, covenant, condition, provision or agreement herein contained is held to be invalid, void or otherwise unenforceable by any court of competent jurisdiction, the fact that such term, covenant, condition, provision or agreement is invalid, void or otherwise unenforceable shall in no way affect the validity or enforceability of any other term, covenant, condition, provision or agreement herein contained.

16.     **Limitation on Receiver's Liability.** The obligations of Receiver under this Agreement are not personal obligations of the Receiver and Broker shall not look to the personal assets of, nor seek personal recourse against, the Receiver.

17.     **Indemnification.** To the fullest extent permitted by law, Broker agrees to indemnify, protect, defend and hold Receiver, its employees and agents entirely harmless from all liability on account of any and all claims under worker's compensation acts and other employee benefit acts with respect to Broker's employees. Broker shall also indemnify, protect, defend and hold Receiver, its employees and agents entirely harmless from and against any and all liens, claims for loss, expense, damages because of personal injury or death or damages to property, or other costs or charges, directly or indirectly arising out of, in whole or in part, Broker's negligent acts, errors and/or omissions in the performance of his obligations as stated in this Agreement, or the negligent acts, errors and/or omissions of Broker's employees or independent contractors in the performance of their obligations as stated in this Agreement. Broker will defend with counsel reasonably approved by Receiver any and all claims or suits which may be brought or threatened against Receiver or its employees or independent contractors in connection therewith and will pay on behalf of Receiver any expenses which Receiver incurs by reason of such claims (including, but not limited to, court costs or actions). The coverage of such indemnification shall include, without limitation, attorneys' fees and court, arbitration and/or mediation costs incurred by Receiver with regard thereto. Said indemnity shall survive the expiration or termination of this Agreement until such time as action against Receiver on account of any matter covered by this indemnity is barred by the applicable statute of limitations. Such payments on behalf of Receiver shall be in addition to any and all other legal remedies available to Receiver and shall not be considered Receiver's exclusive remedy.

18.     **Representations by Broker.** Broker represents that it is duly licensed and qualified to act as a real estate broker in the State of where the Property is located. Broker represents and warrants to Receiver that Broker will market the Property and otherwise perform Broker's services under this Agreement in accordance with all applicable federal, state and local laws and regulations (including, without limitation, nondiscrimination laws and regulations). Without limiting the foregoing, the parties acknowledge that it is illegal for either Receiver or Broker to refuse to display or sell the Property to any person because of race, color, religion, national origin, sex, marital status or physical disability. Broker acknowledges and agrees that the Receiver desires to have the Property (and improvements thereon, if any) marketed and sold on an absolutely "As-Is, With-All-Faults" basis.

19.     **Cost of Enforcement.** In the event of any action or proceeding between Receiver and Broker to enforce any of the provisions and/or rights under this Agreement or on account of a breach of any term or provision hereof (including without limitation arbitration, mediation and court actions at law or in equity), the unsuccessful party to such action or proceeding agrees to pay to the prevailing party all costs and expenses, including reasonable attorneys' fees, incurred therein by such prevailing party, including any such costs and expenses incurred in any appeal, and if such prevailing party shall recover an award or

TRIGILD
COMMISSION AND LISTING AGREEMENT FOR SALE OF PROPERTY-Mervyns
38584-00001/101210155.1

4

judgment in any such action or proceeding, such costs, expenses and fees shall be included in and as a part of such award or judgment.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the Effective Date.

"RECEIVER":

Receivership Estate Over Specific Assets of DDR
MDT MV Anaheim Hills L.P., et al
12707 High Bluff Drive, Suite 300
San Diego, CA 92130

By: _____
William J. Hoffman, solely in his capacity as Court
Appointed Receiver Over Specific Assets of MDT
MV Anaheim Hills L.P., et al
As appointed by the United States District Court
Northern District of California in Wells Fargo Bank,
N.A. as Trustee, etc., v. DDR MDT MV Anaheim
Hills LP, etc., et al.
(Case No. CV 10-3493 EMC)

"BROKER":

Cornish & Carey Commercial Newmark Knight
Frank
1601 Response Road, Suite 160
Sacramento, CA 95815

By: _____
Print Name: Sean Fulp
Title: Managing Director

Exhibit A
Property List

1. An approximately 75,339 SF building located at 2602 Somersville Road, Antioch, CA 94509 and commonly known as Mervyns at the County East Shopping Center.
2. An approximately 78,819 SF building located at 5849 Lone Tree Way, Antioch, CA 94513 and commonly known as Mervyns at the Slatten Ranch Shopping Center.
3. An approximately 59,720 SF building located at 1467 Country Club Drive Madera, CA 93638 and commonly known as Mervyns at Madera.
4. An approximately 61,363 SF building located at 1755 Hilltop Drive, Redding, CA 96002 and commonly known as Mervyns at Redding.
5. An approximately 78,816 SF building located at 6895 Sierra Center Parkway Reno, NV 89511 and commonly known as Mervyns at Sierra Center.
6. An approximately 90,348 SF building located at 600 Santa Rosa Plaza, Santa Rosa, CA 95401 and commonly known as Mervyns at Santa Rosa Plaza Shopping Center.

Exhibit "B"
Commission

The following commission structure shall be applicable to both individual property sales and grouped property sales and payable only to the listing broker.

- 1.75% of the gross sales price of any sale up to $4,999,999.
- 1.50% of the gross sales price of any sale up to $9,999,999.
- 1.25% of the gross sales price of any sale of $10,000,000 or greater.